# PEORIA & PEKIN UNION RAILWAY COMPANY
## v.
# WILLIAM C. H. BARTON.

*Railroads—Bridges— Flowage—Damage by— Evidence — Pleading — Practice.*

1.   Railroad companies are only bound to build and maintain such bridges and other structures as ordinary and reasonable men can foresee shall be necessary to meet the ordinary contingencies and demands of nature.

2.   A verdict which is not fairly supported by the evidence should be set aside.

3.   Without previous notice of the defective character of a railroad bridge, or request to make changes therein, a company purchasing the road after the building thereof is not liable in damages to a landowner injured through flowage of his property caused by the manner in which such bridge was constructed.

4.   An agreement entered into between the plaintiff and defendant in a given suit, that the same shall be dismissed in case defendant does a certain thing, obligates the plaintiff upon such performance to so dismiss, and the amendment of his declaration, whereby he seeks to bring into the case new grounds of recovery, can not avail him.

5.   A party may plead as many pleas and set up as many defenses as he likes, although some of them may be inconsistent with others.

6.   Objections to pleadings can not be primarily made herein.

[Opinion filed December 8, 1890.]

APPEAL from the Circuit Court of Peoria County; the Hon. T. M. SHAW, Judge, presiding.

Messrs. STEVENS & HORTON, for appellant.

Messrs. WILLIAM S. KELLOGG and JAMES A. CAMERON, for appellee.

C. B. SMITH, P. J.   This was an action in case brought for causing an overflow of land and consequent destruction of property belonging to appellee by the maintaining of a pile bridge across Kickapoo Creek where it flows through appel-

lee's land.   The suit was begun on the 12th day of February,
1886.   On the 5th day of May following the general issue
was filed.   On the 6th day of February, 1889, the defendant
obtained leave to file, and did file two additional pleas of *puis
darrien continuance*.   These two pleas set up an agreement
made with the plaintiff in April after the suit was begun in
1886, that if the defendant would take away and remove the
bridge complained of in the declaration, and in its place build
a bridge that would allow the water to pass through unob-
structed, that appellee would dismiss his cause of action
against appellant and release it from all damages claimed by
him by reason of the maintenance of the said bridge.   The
pleas further allege that the defendant did in pursuance of its
agreement tear down the old bridge complained of and build
a new iron single span bridge, with stone abutments large
enough to allow the water to flow through freely.

After these pleas were filed the plaintiff on two different
occasions obtained leave to amend his declaration and include
in it new elements of damage, but only such as had been
caused, as alleged, from the existence of the pile bridge.

Issues were joined on these pleas and two trials were had.
The last one resulted in a verdict for the plaintiff, appellee,
for $4,391.   A motion for a new trial was made and over-
ruled by the court and judgment rendered on the verdict.
From that judgment this appeal is prosecuted.   Numerous
errors are assigned and relied upon in the argument.

It appears from the evidence that in 1881 and from thence
forward appellee owned certain land, about 240 acres, through
which Kickapoo creek ran, and that over plaintiff's land and
across the said creek the railroad now owned by appellant
was built, with a bridge erected upon and supported by piles.
This bridge was built and owned after its construction by the
Peoria, Pekin & Jacksonville Railroad Company, and remained
in substantially the same condition until the time of the injury
complained of.   The road was afterward sold under a fore-
closure proceeding, and finally came by purchase to be owned
and operated by appellant, and was owned and operated by it
at the time of the injury complained of.   The bridge proper

over the bed of the creek was from 140 to 160 feet wide. The approach to the bridge was built upon tressel work in the usual and customary manner, and was about 300 feet long. The piles supporting the bridge were about sixteen feet apart and crossed the creek at an angle.   Kickapoo creek flowed through bottom land in crossing appellee's farm, and formerly spread out over this bottom land in times of high water. After the bridge in question was built, appellee built dykes above the bridge on either side of the creek to compel the water to stay in the channel and prevent its overflowing his land.

This was the condition of things at the bridge and upon appellee's land on the 14th of February, 1883, when a great and unusual flood came and filled the streams in a large section of the country with water, and broke up the ice then in this and other streams, and caused great destruction of property.   One of the consequences and effects of this flood was that the flood in Kickapoo creek carried down timber, logs, brush, and whatever else was found loose in its track, overflowing all the bottoms and breaking up the ice, so that a gorge of ice, logs and other things carried down with the water was formed at this railroad bridge, and the water thrown back in still larger volume upon appellee's premises.   From this flood came the damage complained of by the plaintiff, which he alleges carried off two hundred cords of wood, two hundred tons of hay, a large amount of fencing, and deposited large amounts of sand and *debris* on his land, and broke down and destroyed his dykes, etc.

The proof is clear that this flood was an extraordinary one, and appellee himself swears that he had not known such a flood since the year 1849.   Many witnesses testify to the unusual and extraordinary character of the flood.   Several bridges on the Kickapoo belonging to other railroad companies were washed away and much valuable property destroyed. The ground was frozen hard and covered with ice and sleet, so that all the water from the clouds and melting snows ran into the creeks and rivers.

The gravamen of the charge in the declaration is, that the

defendant wrongfully maintained, kept and used a bridge constructed in such manner as to obstruct and hinder the free passage of the water flowing through such creek.

Numerous objections to the plaintiff's right to recover in this suit are urged upon us, among which are the following:

1.  That the storm and flood which caused the injury was of such an unusual and extraordinary character, that no human foresight could reasonably provide against it.

2.  That in consideration of appellant building a new bridge, appellee would then release all claim for damages resulting from the flood.

3.  That inasmuch as the defendant did not build the bridge (and the same not being necessarily a nuisance), it could not be chargeable with maintaining it in an improper manner, without being first notified of the dangerous or objectionable character of the bridge and a request to correct it, appellant not having made any material changes in the bridge after purchasing the road.

4.  That appellee himself caused or contributed to his own injury by building dykes on the sides of this creek, and thus trying to force all the water across his farm and under the bridge in a narrow channel, instead of allowing it to spread out over the bottom and have the full length of the bridge and its tressel, and to flow through and under, as by nature it was accustomed to do in times of great floods.

5.  That the damages are excessive.

First.  After a careful study of this entire record, we think all of these objections are well made.  The record and arguments in the case are too long to justify or even permit us to enter into a detailed discussion of the evidence, and we shall content ourselves by merely stating our conclusions ; First, as to the character of the storm, we think the proof is clear and really uncontradicted, that the storm which caused the injury was such that no ordinary, human foresight could provide against it.

Railroad companies are only bound to build and maintain such bridges and other structures as ordinary and reasonable men can foresee shall be reasonably necessary to meet the

ordinary contingencies and demands of nature.   As well might railroad companies be compelled to build bridges that would withstand the fury and power of the cyclone as to compel them to build against the rushing torrent of waters, in times of great flood, when all barriers are swept away before widespreading and overflowing creeks and rivers.   To hold railroad companies to such a rule would be most unreasonable and unjust.   And the failure of the company in this case to provide a bridge large and strong enough and with piles far enough apart to allow the unobstructed flow of this unexpected and immense volume of water in this little creek, with all its burden of floating logs, trees, timber, brush, etc., was not wrongful nor negligent, and therefore, not actionable.   Ill. Cen. R. R. Co. v. Bethel, 11 Ill. App. 17; G. C. & S. F. R. R. Co. v. Poole, 34 A. & E. 187.   The proof here discloses the fact that a number of other railroad bridges belonging to the C. B. & Q. road crossing this same creek were swept away by the same flood.   We think the verdict was most clearly and manifestly against the great preponderance of the evidence upon that point, and for that reason should have been set aside.   While great respect and confidence should be awarded to the finding of a jury, still it will not do for courts to abandon all control over verdicts of juries, and permit verdicts to stand that are clearly and certainly wrong, and it makes no difference whether such erroneous results are reached through a failure to understand the evidence and apply it, or from passion or prejudice, or any other motive.   A verdict which is not fairly supported by the evidence ought to be set aside.

Second, the proof is not denied that appellant did not build this bridge, and it is clear no substantial change was made in it after appellant bought the road until the damage to appellee occurred.   We think the proof strongly preponderates against appellee having given any notice to appellant of the defective character of the bridge, or of any request to correct it before the injury occurred, and without proof of such notice appellee can not recover.   No notice was given until this injury occurred.   Cooley on Torts, 611; Groff v. Ankenbrandt, 124 Ill. 51.

Third, as to the settlement. We think the proof largely preponderates in favor of the settlement of the controversy as alleged in defendant's pleas, and that appellee did agree to dismiss this suit if appellant would build a new bridge. Instead of doing this, he twice amended his declarations and sought to bring into the case new grounds of recovery, but they all grew out of this original wrongful act complained of, and were covered by the agreement to settle. Appellee kept its contract and built a new bridge at a large expense, and appellee should now be held to his agreement to dismiss his suit.

Fourth, we think appellee in a very material manner contributed to his own injury by building dykes along this creek and fencing the flood into a narrow channel, and thereby aided in creating the gorge under this bridge, and throwing the water back and causing it to break his dykes. Had the water been allowed to spread out over the bottom, and allowed the whole length of the bridge to pass under unobstructed by the plaintiff's dykes, the chances for the gorge would have been greatly lessened. Although it is probable that without the dykes plaintiff's property would still have been swept away by the wide-spreading waters, still in that event he could not have been chargeable with aiding the result.

We also think the damages excessive. A part of the damages claimed (for which he is evidently allowed by the jury) are for fences washed away by the flood, some of which could not have resulted from the existence of the bridge.

He also claims that about ten acres of his land were covered by sand and wholly destroyed, and that such land was worth $300 per acre.

It seems to us a most unreasonable claim to make, that the bridge had anything to do with the deposit of sand on plaintiff's land. This sand was carried down from the hills and gullies above the bridge onto plaintiff's bottom land, and there deposited by the water before it reached the bridge.

It was testified by some witnesses that the land covered by sand was worth $300 or $400 per acre for the purpose of building manufactories. Whatever we may think of this

demand for land outside the neighborhood where any factories were ever liable to be built, it is certain the deposit of sand could not make the land less valuable for that purpose, and the proof is that the deposit of sand did not greatly lessen its value for agricultural purposes.

Complaint is also made that the court erred in giving the last two instructions asked for by the plaintiff relating to the settlement. We fail to find any evidence in this record which justified the giving of either instruction. The plaintiff positively denied making any proposition looking to a settlement with anybody. Both instructions should have been refused.

It is insisted by appellee that the defendant waived the general issue, by pleading its two special pleas claimed to be *puis darrien continuance*, and rested its entire case in the settlement. We do not concur in this view. Under our statutes a party may plead as many pleas and set up as many defenses as he likes, although some of them may be inconsistent with each other.

At all events, appellee treated the last two pleas as ordinary pleas in bar, and raised no objection on the trial, and it is now too late to raise that question in this court for the first time. All such objections, even if there were anything in them, must be made below, and if not made there they will be regarded as waived here.

For the errors above indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*