## Village of Palmyra v. G. S. Warren, et al.

1. Lien—*what does not create right to.* Where a village notifies the owners of certain premises located therein that such premises constitute a nuisance, and are, in fact, a nuisance, and directs such owners to abate the same, and where such owners fail so to abate such nuisance and the authorities of such village in consequence proceed to abate the same and in so doing expend a sum of money to the benefit of such premises, a lien against such premises does not arise in favor of such village.

Proceeding to enforce lien. Appeal from the Circuit Court of Macoupin County; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the November term, 1903. Affirmed. Opinion filed June 28, 1904.

DAVID E. KEEFE and SCOTT ETTER, for appellant.

BELL & BURTON, for appellees.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

Appellant filed its bill in chancery against Isaac N. Lamar, C. T. Hanshaw and G. S. Warren, appellees, in which it alleged the following facts:

On August 19, 1901, appellee Warren was owner of the equity of redemption of certain real estate described in the bill, which had been sold July 1, 1901, under a decree of foreclosure; that at such sale appellee Lamar became the purchaser of said real estate; that a certificate of purchase was executed to him and that on said August 19, he was the holder of such certificate; that a milling plant and mill pond were situated upon the property, which was in the village of Palmyra; that on August 19, 1901, said mill pond was declared to be a nuisance by the board of trustees of appellant, at a regular meeting assembled for that purpose; that a personal notice was served upon appellee Lamar notifying him that a nuisance existed upon the property, and requesting him to fill the pond, or otherwise to abate the nuisance within ten days; that a similar notice was sent to appellee Warren by mail, he being a non-resident of Illinois; that appellees did not abate the nuisance; that while awaiting action on part of appellees, the State Board of Health directed the board of trustees of appellant to take measures to fill the pond, and to do whatever was necessary to put the same in a reasonably sanitary condition; that on August 31, 1901, appellant caused the pond to be filled, and expended the sum of $625 in so doing, and that the property was improved and benefited thereby. The bill prayed a lien upon the property for the amount so expended and for an order for the sale of the property to satisfy the lien.

Appellees Lamar and Hanshaw filed a general demurrer to said bill which was sustained and appellant having elected to abide thereby, the court ordered the same dismissed for want of equity.

The only question presented by this record for our determination, is whether upon the facts alleged in the bill of complaint, a court of equity has the power to grant the relief prayed, and whether there is any equity in the bill.

Appellant insists that having performed a necessary and legal act, whereby it was compelled to and did spend money, and having not only abated the nuisance, but at the same time benefited the property, it acquired an equitable lien upon it for the sum so expended; that where a duty is cast upon one to abate a nuisance and he refuses or neglects to do so, and a municipality is compelled to act, a promise to pay is implied by law, and a lien created which will be enforced in a court of equity.

A lien is not, strictly speaking, a property in the thing itself, nor does it constitute a right of action for the thing. " At law, a lien is usually deemed to be a right to possess and retain a thing, until some charge upon it is paid or removed. There are few liens which at law exist in relation to real estate. The most striking of this sort undoubtedly is the lien of a judgment creditor upon the lands of his debtor. But this is not a specific lien on any particular land, but is a general lien over all the real estate of the debtor, to be enforced by execution, or other legal process, upon such part of the real estate of the debtor as the creditor may elect. Liens at law generally arise, either by the express agreement of the parties, or by the usage of trade, which amounts to an implied agreement, or by mere operation of law." Story's Eq. Jur., sections 1215–16. "Equitable liens are such as exist in equity, and of which courts of equity alone take cognizance. In regard to these liens, it may be generally stated that they arise from constructive trusts. They are, therefore, wholly independent of the possession of the thing to which they are attached as an incumbrance; and they can be enforced only in courts of

equity." Ibid., sec. 1215. "They differ from liens at law as they operate after possession has been changed and are available by way of charge instead of detainer." Adams' Eq. Jur., 127. "While courts of equity will enforce liens at law, they are, in general, governed by the same rules of decision as courts at law, with reference to the nature, operation and extent of such liens." Story's Eq. Jur., sec. 1216. "But there are liens recognized in equity, whose existence is not known or obligation enforced at law, and in respect to which courts of equity exercise a very large and salutary jurisdiction. In regard to these liens, it may be generally stated, that they arise from constructive trusts. They are, therefore, wholly independent of the possession of the thing to which they are attached, as a charge or encumbrance; and they can be enforced only in courts of equity." Ibid., sec. 1217.

The lien of a tenant in common, or life tenant, for the amount expended for permanent improvements on real estate held in common; of the party making the same for the cost of improvements upon real estate where the true owner stands by and suffers them to be made without notice of his title; the marshalling of rights of priority between encumbrancers, and various other examples which might be given, are illustrative instances of equitable liens arising from the doctrine of constructive or implied trusts. That no privity of estate existed between the parties at bar, from which a trust relation could possibly be implied, is so clear as to render discussion of the proposition unnecessary. It follows, therefore, that if any lien existed under the facts averred in the bill, it must have been one at law.

The case of Train v. Boston Disinfecting Co., 144 Mass. 523, upon which counsel for appellant chiefly rely, was an action in replevin to recover possession of certain rags, upon which the defendant, a disinfecting company, claimed a lien for the cost of disinfecting the same. The rags were imported by vessel into Boston by the plaintiff and were seized by the board of health, and by its orders disinfected by the defendant. The plaintiff then demanded possession

of the rags but the defendant refused to deliver the same without the payment of all charges for disinfection, claiming that such charges were a lien upon the rags. The statute of Massachusetts, then in force, provided that the board of health in each seaport town might at any time cause the cargo of any vessel, which in its opinion was foul or infected so as to endanger the public health, to be removed to the quarantine ground and thoroughly purified at the expense of the owner. Under this statute the board of health of the city of Boston passed an ordinance, under which the rags in question were seized, providing that all rags arriving at that port should be disinfected in a manner satisfactory to the board. The court held that under the statute, the board of health had a right to make a reasonable contract for the disinfection of the rags; that the duty of paying the expense thereof, was by statute cast upon the plaintiff; that a promise to pay the same would therefore be implied by law, and that such contract necessarily implies a lien in favor of the contractor performing the disinfection, for the cost thereof. In discussing the question of the right to a lien the court says : "Nor is it important that while expenditures may be made upon real estate under orders of the board of health, a lien can only exist upon personal property, and thus that this remedy is partial. There is no reason why a well recognized remedy as to personal property should not be enforced, because there may be cases coming within the statute affecting real estate to which it would not be applicable."

If it were true, as contended, that in consequence of the facts alleged in the bill, a duty was by law cast upon appellees to abate the alleged nuisance, and that upon their refusal to act, appellant was compelled to, and that a promise upon the part of appellees was therefore implied by law, then any lien arising for the expense of abating the nuisance, would clearly be one at common law. No duty, however, was by law cast upon appellees to pay the expense of abating the nuisance.

Section 63, chapter 24, of the statute entitled Cities,

Villages and Towns (R. S. 1901, 286) provides that the city council in cities, and president and the board of trustees in villages, shall have *inter alia* the following powers :

" Fortieth. To provide for the cleansing and purification of waters,. water courses and canals, and the draining or filling of ponds on private property, whenever necessary to prevent or abate nuisances.

" Seventy-fifth. To declare what shall be a nuisance, and to abate the same; and to impose fines upon parties who may create, continue or suffer nuisances to exist." (Ibid. 283.)

" Seventy-eighth. To do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease." (Ibid. 283.)

The foregoing constitute the only powers conferred by statute upon municipalities, relating to the subject of nuisances. It will be observed that no power is therein conferred upon municipalities by either ordinance, resolution or regulation, to impose upon any person or property, real or personal, the cost of abating a nuisance existing thereon or arising therefrom. It follows that there was no legal obligation upon appellees to pay the expense of abating the nuisance in question, and therefore no promise to pay the same could be implied. For this, and the further reason that the property sought to be charged therewith was real estate, we are of opinion that no lien at law existed or could exist upon the property described in the bill. The liens upheld in Train v. Boston Dis. Co., *supra*, and City of Buffalo v. Yattan, Sheldon, N. Y., 483, were in no sense equitable liens upon personal property. They were purely common law liens arising from a legal obligation imposed by statute, and of which possession was essentially the foundation. The other cases cited by counsel for appellant involved purely equitable liens arising under the doctrine of implied trusts.

The decree of the Circuit Court dismissing the bill for want of equity was proper, and it will be affirmed.

*Affirmed.*