## T. E. Smith, Appellee, v. Toledo, St. Louis & Western Railroad Company, Appellant.

RAILROADS—*duty in constructing railway.* The law casts a duty upon a railway company when constructing its railway so to construct the same as not to interfere with the natural drainage of the lands over which and adjacent to which it passes. If the flow of surface water in the natural condition of the land before the railroad was constructed, is across the proposed right of way of the railroad, means must be furnished whereby it may flow after the construction in the same manner as prior thereto. If an embankment is built, culverts and drains sufficient in size and number must be constructed to carry across the right of way the natural ·drainage of the adjacent lands; that is to say, such quantities of water as are produced by rain-falls common in the vicinity, or such large or heavy rains as from the history of the community are reasonably to be expected or anticipated. A railway company is not required however to furnish better means of drainage for surface water than existed previous to the construction of its railroad. It is only required to refrain from interfering or obstructing the means of drainage provided by nature. Nor is it bound to provide sources of egress for accumulations of water produced by rains that are extraordinary in their nature and quantity and without precedent in the vicinity of its road, even though it might by the exercise of extraordinary means coupled with unusual foresight, have provided against damages by the same.

Action in case. Appeal from the Circuit Court of Vermilion county; the Hon. E. R. E. KIMBROUGH, Judge, presiding. Heard in this court at the October term, 1911. Reversed. Opinion filed March 15, 1912.

C. E. POPE and H. M. STEELY, for appellant; CHARLES A. SCHMETTAU, of counsel.

BARNETT & BOYLE, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in case for the recovery of damages alleged to have been occasioned to the property

of the plaintiff, due to an overflow of water upon his land. The declaration charges that on October 15, 1909, the plaintiff was the owner of a tract of land upon which was situated a certain building and machinery used by him in the manufacture of artificial ice and in the production of electricity; that the defendant used and operated a certain railroad track and embankment supporting the same, which embankment was adjacent to the property of the plaintiff; that the water which fell upon the land south of said track naturally flowed toward said track and across the ground occupied by the same, and but for said embankment would have flowed away in such a manner as not to injure the premises of the plaintiff; that the defendant negligently maintained across its said embankment and tracks a culvert for the purpose of carrying away the water, which said culvert was not sufficient in size for that purpose; by means whereof the said water flowed in and upon the premises of the plaintiff and thereby damaged his property. The second count of the declaration charges the maintenance of the culvert in question, and that the plaintiff by reason thereof was prevented from carrying on his business and deprived of gains and profits. A trial by jury resulted in a judgment in favor of the plaintiff for $350.

The evidence shows that the ground in the vicinity of the manufacturing plant of the plaintiff and the railroad of the defendant is low in grade, and that the defendant has since the construction of its railroad maintained an embankment immediately east of said plant, for the distance of over 1,000 feet; that it constructed and maintained two culverts through said embankment, which openings were sufficient to take care of all the water which flowed to them prior to June 25, 1909; that on the evening of that day the rain fell in such unusual quantities and within so short a space of time, that the water rushed down in tor-

rents from the south toward the railroad embankment and flowed over the top thereof into the plaintiff's plant, flooding the land both north and south of the railroad and sweeping away the embankment in question; that the railroad tracks were entirely submerged for a distance of 2,000 feet; that a huge lake several feet in depth was formed on both sides of the railroad track, which entirely surrounded plaintiff's plant.

The law casts a duty upon a railway company when constructing its railway to so construct the same as not to interfere with the natural drainage of the lands over which and adjacent to which it passes. If the flow of surface water in the natural condition of the land before the railroad was constructed, is across the proposed right of way of the railroad, means must be furnished whereby it may flow after the construction in the same manner as prior thereto. If an embankment is built, culverts and drains sufficient in size and number must be constructed to carry across the right of way the natural drainage of the adjacent lands; that is to say, such quantities of water as are produced by rainfalls common in the vicinity, or such large or heavy rains as from the history of the community are reasonably to be expected or anticipated. A railway company is not required, however, to furnish better means of drainage for the surface water than existed previous to the construction of its railroad. It is only required to refrain from interfering or obstructing the means of drainage provided by nature. Nor is it bound to provide sources of egress for accumulations of water produced by rains that are extraordinary in their nature and quantity and without precedent in the vicinity of its road, even though it might by the exercise of extraordinary means coupled with unusual foresight, have provided against damages by the same. 2 Woods Railway Law, 1049; R. R. Co. v. Halloren, 53 Texas 46.

In Illinois Central R. R. Co. v. Bethel, 11 Ill. App.

17, where the facts involved were similar to those at bar, it was held that a railroad constructing its road pursuant to legislative authority over watercourses on private land, is bound to make suitable bridges, culverts or other provisions for the carrying off of the water effectually, and to keep them in suitable repair for the purpose, if practicable; that what will be deemed reasonable care in respect to the construction or repair of such bridges, culverts, etc., is that the railroad shall bring to bear all the engineering skill, knowledge and care ordinarily applied to works of like kind, in view of the size and habits of the stream and the character of its channel—such as are deemed sufficient to avoid all danger from such stream in connection with such works, in all ordinary floods or freshets. The court lays down the proposition that by ordinary floods is understood all usual and expected freshets occurring in the stream; by extraordinary floods, freshets not occurring annually—such as are not usual and always to be expected in certain seasons in each and every year. And where a railroad has exercised ordinary care in the construction and repair of the bridges and culverts over watercourses on private land, and is not otherwise guilty of negligence, it cannot be made liable for damages occasioned an adjacent proprietor by extraordinary floods choking or washing out the channel of the stream. This case is referred to and cited with approval in Chicago & Alton R. R. Co. v. Calkins, 17 Ill. App. 55, and R. R. Co. v. Horan, 22 Ill. App. 145. See also People v. Cement Co., 22 Ill. App. 159, and Ry. Co. v. Barton, 38 Ill. App. 469.

The greater weight of the evidence in the case at bar, clearly and satisfactorily establishes that a rainfall of the character in question had never occurred in that vicinity before, and justified the conclusion that no ordinarily prudent person could have foreseen that the same was likely to occur. It is further es-

674 · APPELLATE COURTS OF ILLINOIS.

tablished by the same degree of proof, that the defendant had provided means of drainage by the construction and maintenance of culverts under and through its embankment sufficient in number and size for the surface water to drain and flow across its right of way in the same manner as it had been accustomed to flow before the construction of the railroad, and that the overflow of the land upon which the plaintiff's plant was situated and the territory south of the railroad, was not due to any insufficiency in the culverts, and that the same damages would have been occasioned had the railroad not been there. We are therefore of opinion that the verdict is not sustained by the greater weight of the evidence; that it is clearly contrary thereto. In such state of the proof it becomes our duty to reverse the judgment rendered thereon. We find as a matter of fact that the defendant was not guilty of the negligence charged in the declaration, and the clerk of this court will incorporate such finding in the judgment.

The judgment of the Circuit Court is reversed.

*Reversed.*