GUSTAV ZERBAN, Appellee, *vs.* LOUIS F. EIDMANN, Appellant.

*Opinion filed April 19, 1913—Rehearing denied June 4, 1913.*

1. EASEMENTS—*right to be free from flow of surface water may be acquired by prescription.* Where the owner of the dominant estate voluntarily changes the course of the natural drainage so that the water which would naturally flow over the servient estate thereafter flows through a ditch constructed by the owner of the dominant estate, and such condition continues, without interruption, for over twenty years, mutual and reciprocal rights are ac-

quired by prescription which forever release the servient estate from the burden of the original easement.

2. SAME—*it is not essential that dominant and servient estates shall be contiguous to each other.* In order that the owner of the servient estate may acquire the right, by prescription, to have the waters from such estate flow through a ditch voluntarily constructed by the owner of the dominant estate which changed the natural flow of surface water, so that it thereafter flowed over the dominant estate, it is not essential that the two estates shall be contiguous to each other.

APPEAL from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

TURNER & HOLDER, for appellant.

BARTHEL, FARMER & KLINGEL, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellee filed a bill in the circuit court of St. Clair county to the September term, 1910, seeking a mandatory injunction to compel appellant to remove a certain dam constructed by him in a ditch on his premises, and to fill up another ditch, in order that the water then flowing through the last named ditch onto appellee's land might be carried through an old drain or channel which appellant had dammed up. After various pleadings were filed the case was referred to a master, who, after taking evidence, recommended that the mandatory writ of injunction be issued as prayed. After a hearing the chancellor entered a decree in conformity with the master's report. An appeal has been taken directly to this court on the ground that a freehold, in the nature of a perpetual easement, is involved in the decision of the case.

The testimony as to the drainage of these lands is of such a character that a plat showing the location of the

various properties, drains and ditches mentioned in the testimony will assist in an understanding of the case:

The lands and drains in question are located in sections 17 and 18, township 1, south, range 6, west, in St. Clair

county, Illinois. Appellee was the owner of approximately
one hundred and twenty acres of land in the north half of
section 18, shown on the plat as lots 5 and 7. East of ap-
pellee's farm was that of Simon Klingel, and east of the
south part of the Klingel land was land owned by Nicholas
Sauerwein. South of all of the Klingel farm and of land
owned by Sauerwein and of the east part of the land owned
by appellee is the farm of appellant. South of the west
part of appellee's land and west of the north-west forty
of appellant's land is a forty owned by Rudolph Lembke.
West of this forty is another forty owned by Mrs. Hugo
Herold, and immediately west of lot 7 of appellee is lot 1
owned by her husband, Hugo Herold. North-east of the
Sauerwein farm is a low place, called the Hinderman pond,
from which a ditch, called ditch "A," extends, as shown on
the plat, into what is known as the Zerban slough, its out-
let finally being found in a north-westerly direction into
Silver creek. This ditch appears to have been constructed
some time in the '50's by the joint owners of the lands
which it crossed and has been kept in repair since that time
by said owners. Commencing at an elm tree standing at
about the quarter corner on the section line running north
and south between sections 17 and 18, an artificial ditch,
called ditch "B," had been constructed years previous to
this controversy, which extended west to the center of sec-
tion 18 on the half section line and then south on the line
between the land of appellant and the forty owned by Ru-
dolph Lembke to about the center of the said forty, where
the water then flowed in a north-westerly direction across
the Lembke forty and the Herold land, finding its outlet in
Silver creek. There is conflict in the testimony as to the
size of ditch "B," its use and the time it was constructed.
The master found that it was constructed in 1877 or with-
in the four years thereafter, and had been in use until this
controversy arose, in 1910; that since 1881 an embank-
ment had been maintained on the north side of said ditch

"B" by the mutual consent and license of said Klingel and Eidmann, so that in times of excessive rains the surface water from appellant's land might be prevented from flowing over the land of Klingel. This ditch, from the evidence, appeared to have been made originally by plowing a furrow, and had been enlarged, cleaned out and maintained by the owners from time to time, until 1910. Eight or ten years before the filing of this bill there was a dispute between Klingel and Eidmann as to whether all the water that had formerly run through ditch "B" should continue to run west in that ditch, and Klingel attempted to make an outlet for ditch "B" by running it east to his (Klingel's) line and then north into ditch "A." The evidence tends to show that the water would not flow in that direction, and thereafter, until 1910, the water was permitted to flow, as formerly, west in said ditch "B" along the half section line and then southerly in said ditch between appellant's and Lembke's land and then northwesterly, as stated heretofore. The evidence also shows that in 1910 Klingel and appellant had a discussion as to the use of this ditch, and as a result Klingel sold a narrow strip of land along his western boundary ten feet wide and thirty-seven rods long, extending from the half section line north to ditch "A," and on this strip appellant constructed a ditch, which is called ditch "C;" that in May, 1910, appellant, without the consent of appellee, caused ditch "B" immediately west of the starting point of ditch "C" to be dammed up, thereby causing the water which had theretofore flowed west in ditch "B" and then south between the lands owned by Eidmann and Lembke, to be turned north through the new ditch "C" into ditch "A;" that by reason of the construction of said ditch "C" a greater quantity of water was carried into ditch "A" than was carried for many years previous, and that by reason of this increased amount of water the land and crops of appellee were seriously damaged.

Two surveyors, William A. Reiss for appellee and
W. C. Wolf for appellant, at different times ran levels over
these various farms and along the ditches. Reiss testified
that ditch "B" was three or four feet wide; that from the
beginning to the point where the ditch turned south he
found a fall of 7.35 feet, and for 932 feet south from the
point where the ditch turned from the east to the south he
found a fall of 1.8 feet; that the eastern part of the Eid-
mann farm drained north to the line ditch and that the
westerly portion drained south and west; that the westerly
portion of the Klingel land drained north and west, and
that there was a fall of 2.25 feet from the south end of
ditch "C" to its outlet in ditch "A;" that the fall to the
north on the western line of the Klingel farm was not as
great as to the south on appellant's land adjoining Lembke's
forty. Wolf testified that Eidmann's land from the south
line on the western portion running north to the elm tree
had a fall of 13 feet, and that the land from that point
north to the old ditch had a fall of 2.3 feet; that west of
the elm tree on the south part of Klingel's land ditch "B"
had been plowed out fresh, and that the land on the north
portion of the Eidmann farm, near the boundary line be-
tween his land and Klingel's, was higher than the south
portion of the Klingel farm; that 357 feet west of the elm
tree the land was 2.9 feet lower than at the elm tree; that
the highest part of the Eidmann farm was a sort of ridge,
the approximate location being shown on the plat; that the
water to the north and east of this ridge would naturally
flow to the north into ditch "A," and to the west of the
ridge it would naturally flow to the west or south to the
southerly end of ditch "B."

The testimony as to the time when these ditches "A"
and "B" were constructed, how large they were and how
they had been maintained and kept up, as well as to the
amount of the flow of water through them, as we have
stated, is conflicting, doubtless due to the fact that there

was no record kept by any of these witnesses as to the dates or conditions. We think, however, the testimony tends strongly to show that ditch "A" was constructed and maintained by the owners of the lands across which it extended since some time in 1852, and that ditch "B" had been constructed and maintained and that all of the surface water from the Eidmann farm had flowed west and south through it for more than twenty years previous to 1910. The master's report and the decree so found, and we think the great weight of the testimony supports that finding. The preponderance of the evidence also shows that ditch "B" had not only been kept up with the consent of appellant, but that he or his tenants had at various times assisted in keeping it open and maintaining it.

Appellee contends that the decree is right because he has a prescriptive right to have the surface waters from the north of the Eidmann farm continue to flow through ditch "B" and not north into ditch "A," and also because he has a right, under the act of 1889, to have these surface waters drained through ditch "B" because the rights obtained by the various property owners who were interested in ditch "A" and ditch "B" must be sustained under said act. While all the authorities are not in accord on this question, we think the right to be free from the flow of surface water may be acquired by prescription. (3 Farnham on Waters and Water-courses, secs. 827c, 902, and authorities cited; Gale on Easements,—8th ed.—520.) This court, after reviewing the authorities at length on this question in *Broadwell Drainage District* v. *Lawrence,* 231 Ill. 86, held that if the owner of the dominant estate voluntarily changes the course of the natural drainage so that the water thereafter ceases to flow over the servient estate, and such condition exists, without interruption, for over twenty years, mutual and reciprocal rights are acquired by prescription, forever releasing the servient estate from the burden of the original easement. The decision reached in

that case is supported by the weight of authority, and any other conclusion would be contrary to sound reason and most inequitable.

Appellant contends that the land of appellee was not immediately connected with ditch "B," and therefore the latter could not acquire an easement in said ditch. Appellee's lot 7 immediately joins the west end of said ditch "B," but it is stated that a road runs along on the line between the north-west forty of appellant and lot 5 of appellee, and that the evidence tends to show that the land in the road belongs to Klingel. Appellant's counsel admitted on the trial of this case that appellee owned said lots 5 and 7 and made no suggestion at that time that the road was owned by anyone else. We find no record proof indicating anything to the contrary. Moreover, it is not necessary that the dominant and servient estates be in contiguity with each other. (Washburn on Easements and Servitudes,—4th ed.—3.) Conceding that the natural flow of the surface water from a part of the Eidmann land was to the north across Klingel's land, the fact that the water draining from it had been permitted, with the consent of Eidmann, to pass for more than twenty years through ditch "B" would prevent him from turning the water back over said land into ditch "A," thereby overflowing appellee's land. *Broadwell Drainage District* v. *Lawrence, supra.*

It is further contended that the bill should have been dismissed for want of necessary parties; that no decree could be entered requiring Klingel to restore the land to its original condition or as to the other adjoining land owners who are not parties. Appellee in his bill or amended bill did not ask to have the water from appellant's land pass over the land of Klingel into the old ditch, but only sought to prevent appellant from taking the water through the new ditch "C" into the old ditch "A" where it crossed appellee's land. Appellee was not in any way claiming that Klingel, Lembke or the other owners that appellant wished to have

made parties by his cross-bill were interfering with his rights by turning water into said ditch "A." The decree only required appellant to remove the dam in ditch "B" just to the west of ditch "C" and to fill up ditch "C," and did not attempt to compel any of said other land owners to do anything. These other land owners have invaded no rights of appellee and no relief is asked against them. Appellant did not ask any relief in his cross-bill, so far as appellee was concerned, that could not be obtained under an answer. He asked in the answer that the relief prayed for by appellee be denied, and that was substantially all that was asked in the cross-bill. The trial court ruled correctly in that regard in sustaining the demurrer to the cross-bill.

The conclusions that we have reached with reference to the prescriptive rights of appellee in restraining appellant from making an outlet for the surface water from his farm into ditch "A" renders it unnecessary to decide whether or not the decree could be sustained under mutual rights obtained by the parties under said statute of 1889.

The decree of the circuit court is in accordance with the facts and the law, and will accordingly be affirmed.

*Decree affirmed.*