(No. 33670.—

ADIEL F. SAELENS et al., Appellees, vs. LEON POLLENTIER et al., Appellants.

*Opinion filed January 19, 1956.*

SAM F. SKAFIDAS, of East Moline, for appellants.

HAYES MURPHY, of Moline, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Rock Island County perpetually enjoining the defendants from in any manner damming or filling a ditch or watercourse to interfere with the flow of water in said watercourse from the lands of the plaintiffs upon and over the land of the defendants. The case involves the question of whether defendants' land was subjected to a perpetual easement of drainage in favor of plaintiffs' land, and a freehold is therefore involved. The appeal was properly taken directly to this court. *Gough* v. *Goble, 2* Ill. 2d 577.

The defendants allege two errors for reversal, *viz:* (1) the judgment of the court is manifestly against the weight of the evidence, and (2) the pleadings and proofs do not correspond.

We are unable to agree with the defendants that the judgment of the court is manifestly against the weight of the evidence. It was stipulated that the plaintiffs were the owners of 35 acres of land and that immediately on the west the defendants were the owners of 38.41 acres, more or less, and that about 1900 a railroad was constructed across both tracts of land running in an easterly and westerly direction across plaintiffs' property, turning south and continuing to the north bank of Rock River upon crossing into defendants' land. It was stipulated that the title to the railroad right of way, through mesne conveyances, finally came into the Davenport, Rock Island and Northwestern Railroad Company, which reported that it had sold the land to Wallace Treichler, and it was further stipulated that no deed appeared of record from the railroad but the widow of Wallace Treichler claimed title to the property.

There was substantial evidence which, if believed by the trial court, showed that the roadbed of the railroad was constructed across the two tracts of land at a height of from 8 to 15 feet above the surface of the ground and that the embankment stopped some 10 rods north of the south line of defendants' premises; that in the original construction of the railroad, in building the roadbed higher than the ground level, an excavation was made, on the south side of the railroad right of way, of a ditch, stated by one witness to be about 20 feet wide at the top, 8 feet wide at the bottom, and 4 feet deep. Some witnesses designate this excavation as a "borrow pit" and others call it a "ditch." Whether a ditch or a borrow pit, the excavation was made for the purpose of building the roadbed and it resulted in a depression on the south side of the railroad through both tracts of land, and this condition had existed for more than 50 years. The evidence shows that some brush grew up in this ditch and there was some filling of silt, and that this had not been removed from the ditch through defendants' land for several years but that the plaintiffs and their predecessors in title had done some cleaning out of the ditch through plaintiffs' land. In the construction of the railroad an underpass was left on the east line of plaintiffs' premises sufficiently deep that a wagon with a load of hay could go under it, and the land to the north of the railroad is higher and water from the land to the north came through this underpass and into the ditch on the south side of the railroad. The track of the railroad had been removed many years ago and the plaintiffs and landowners north of the plaintiffs' land had done some levelling off of the roadbed. There was evidence that the slope of the land from plaintiffs' land to the river was about ⅓ of a foot to the hundred feet, and that the river flowed in a westerly direction.

Before this suit was filed the defendants employed one Raymond Hoste, with a bulldozer, to fill up the ditch on

the south side of the railroad right of way where it entered the defendants' land and thereupon the suit for injunction was filed by the plaintiffs claiming irreparable damage to their land.

From the evidence in the record the court was clearly justified in finding the above facts and that the natural slope of the ground was from the plaintiffs' land in a southerly direction to the Rock River, and that ever since the construction of the railroad in 1900 there was a ditch or excavation on the south side of the railroad that furnished the drainage outlet for plaintiffs' land and other land to the east of plaintiffs.

No contention is made in this case that the railroad company did not have the full right and title to the right of way over both tracts of land now owned by the plaintiffs and the defendants to construct the roadbed and the ditch in question in the manner in which it was constructed, and, in fact, the title of the railroad company is impliedly admitted since it was stipulated that it had conveyed the land within the right of way to Wallace Treichler and that his widow made claim of title to the right of way. The adverse user of this railroad right of way and the ditch in question for the drainage of the surface waters for a period of more than 50 years clearly created a prescriptive right to the future use of the ditch for that purpose under many decisions of this court. *Wills* v. *Babb*, 222 Ill. 95; *Zerban* v. *Eidmann*, 258 Ill. 486.

We said, in the recent case of *Gough* v. *Goble*, 2 Ill. 2d 577, at page 580: "The culvert under the road has been there for more than 40 years and defendants' land must suffer the water from plaintiffs' land to be discharged through this culvert. For more than 40 years the surface waters from plaintiffs' land have passed through the culvert and emerged upon defendants' land at a point almost two feet lower than the general level of defendants' land along its northern boundary and plaintiffs have the right to have

the flow of surface water continue, unimpeded by any obstruction. Defendants contend on this appeal that the flow of water is not impeded but this contention cannot be sustained, for the dam was obviously built and maintained for some purpose, and the defendant Clarence Goble admitted at the trial that the purpose was to keep the water from running on to his land."

The same reasoning applies to the instant case, for it is obvious that the defendants had but one purpose in taking the bulldozer and starting to fill up this ditch at its entrance to the lands of the defendants and that it was for the purpose of impeding the flow of the water, and this they had no right to do.

It is immaterial that this ditch in question is an artificial ditch rather than a natural stream. We believe that the correct applicable law is stated in 56 Am. Jur. p. 621, sec. 151, to-wit: "An artificial waterway or stream may, under some circumstances, have the characteristics and incidents of a natural watercourse. In determining the question, three things seem generally to be taken into consideration by the courts: (1) whether the way or stream is temporary or permanent; (2) the circumstances under which it was created; and, (3) the mode in which it has been used and enjoyed. Where the way is of a permanent character, and is created under circumstances indicating an intention that it shall become permanent, and it has been used consistently with such intention for a considerable period, it is generally regarded as stamped with the character of a natural watercourse, and treated, so far as the rules of law and the rights of the public or of individuals are concerned, as if it were of natural origin."

The further contention is made by defendants that the pleadings and the proofs do not correspond. We agree with the defendants that a plaintiff cannot make one case by his complaint and recover on a different one without amending, but that principle is not applicable to the instant

record and neither do the cases cited support that point. *Burroughs* v. *Mefford,* 387 Ill. 461, recognized the rule urged by the defendants but stated that it was not applicable since the issue made by the pleadings in that case was whether a deed was wrongfully and without consideration obtained under circumstances justifying the trial court in setting it aside and that the decree was definitely within the scope of the complaint.

In *Stowell* v. *Satorius,* 413 Ill. 482, in rejecting the contention that the decree was erroneous under the rule that a party cannot have relief under proofs without allegations nor under allegations without proof in support thereof, the court said, page 490: "The complaint concluded with a specific prayer as well as a general prayer for relief. There is no question but that appellants understood the nature of the claim and understood they were called upon to counteract proof of a trust. The general prayer for relief, under our law, is sufficient to support any decree warranted by the facts alleged by the complaint and established by the evidence. [Citation.] In addition, section 34 of the Civil Practice Act provides that the prayer for relief shall not, except in cases of default, be deemed to limit the relief obtainable."

The complaint in the instant case averred the location and existence of the ditch that has been shown by the evidence in the case and that for more than fifty years it had been the watercourse for the drainage of the lands of the plaintiffs and that the defendants had informed the plaintiffs that they were going to cut off said natural watercourse by damming or filling in the ditch on the east line of the premises they own, which is also the west line of the premises owned by the plaintiffs, and that they had engaged and hired defendant Hoste, who had moved upon said premises a tractor equipped with a bulldozer and was ready to start work filling up said ditch or damming so that the natural course would be shut off.

It is true that they use both the words "ditch" and "natural watercourse" but there can be no question but that the real issue that was being tried was whether or not there was a right for the plaintiffs to have said ditch remain open for the escape of water from the plaintiffs' land, and there could be no prejudice to the defendants from the fact that it was also described as a "natural watercourse." While technically the ditch would not be a natural watercourse, yet as above stated, it was an artificial waterway which by long use became stamped with the character of a natural watercourse, and treated, so far as rules of law and the rights of the public or any individual are considered, as if it were of natural origin.

We find no reversible error in the record and the decree is affirmed.

*Decree affirmed.*