THE VILLAGE OF FORREST, Plaintiff-Appellee and Cross-Appellant, v. NORFOLK & WESTERN RAILWAY COMPANY, Defendant-Appellant and Cross-Appellee.

Fourth District    No. 4—85—0769

Opinion filed July 17, 1986.

Strock & Follmer, Ltd., of Pontiac (Robert P. Follmer, of counsel), for appellant.

Kinate & Morgan, of Fairbury (Gordon M. Kinate, of counsel), for appellee.

JUSTICE SPITZ delivered the opinion of the court:

Plaintiff brought an action in the circuit court of Livingston County to abate a public nuisance maintained by defendant. The circuit court held that plaintiff had acquired prescriptive rights to use a drainage structure passing under defendant's railroad tracks, and that the alteration of said drainage structure by defendant in 1974 caused floods two to three times per year. The circuit court determined that

the existing drainage structure constituted a public nuisance, and ordered defendant to abate said public nuisance by either removing the track and opening the ditch or replacing the existing drainage structure with a new "structure having at least the capacity of the double-box culverts under Route 24." Plaintiff also sought to recover its attorney fees and engineering costs in the abatement action pursuant to a village ordinance; however, the court refused to assess such costs. Defendant appeals the portion of the court's order which found that defendant maintained a public nuisance, and also argues that even if the finding of a public nuisance is affirmed, the remedy which the court ordered is against the manifest weight of the evidence. Plaintiff has cross-appealed the portion of the court's order which denied plaintiff the right to recover its costs of abatement.

We affirm in part and modify in part.

Defendant owns and maintains two "wye" track sections which are located in or near the village of Forrest. Defendant also owns and maintains a set of railroad tracks which run to the north and south of Forrest. Another railroad company owns and maintains a set of east-west tracks which run through Forrest. The wye track sections permit east-west trains to change to the north-south tracks and vice versa. All of the aforementioned tracks were apparently originally constructed in the late 1800's. Culverts were also constructed under these tracks in the late 1800's to facilitate drainage. In 1928, the original structure under the wye track adjacent to Krack Street in Forrest (the Krack Street wye) was replaced with a pile timber trestle bridge. The size of the opening of this structure is in dispute. In 1974, defendant removed the trestle bridge and replaced it with three 48-inch culverts. The combined opening of these three culverts is approximately 38 square feet.

After the new culverts were installed in 1974, water backed up at the location of the culverts after every rainfall of 1 to 2 inches. Flooding occurred on an average of once or twice a year thereafter. Numerous complaints were made to the railroad over the years; however, the railroad failed to take any substantial steps to rectify the situation until 1984, subsequent to the date plaintiff filed the present action. Several witnesses testified that prior to the installation of the culverts in 1974, no flooding problem existed in the village of Forrest.

On March 2, 1984, plaintiff filed a complaint for permanent injunction asking that the defendant be ordered and required to replace three 4-foot corrigated-metal pipe culverts (the Krack Street culverts). Plaintiff subsequently filed an amended complaint April 16, 1985, which consisted of two counts. Count I sought to have the Krack

Street culverts declared a nuisance and that the defendant be ordered to replace the culverts with a more appropriate drainage structure. Count II alleged a "nuisance" ordinance violation and asked the court to order the defendant to abate the nuisance allegedly caused by the Krack Street culverts, and further to order defendant to pay plaintiff's costs incurred in its attempt to abate the alleged nuisance and to pay plaintiff's attorney fees. Defendant filed its answer to count I on May 31, 1985, and its answer to count II on August 21, 1985. The trial began August 21, 1985, with the trial court hearing the case without a jury.

At the conclusion of the evidence and after hearing arguments of counsel, the trial court ruled that the Krack Street culverts were not adequate. The trial court found that the credible evidence was that there was no natural stream in this area. The court found, however, that the drainage ditch in question had been in existence for such a long period of time that regardless of who it was created by, the village had a prescriptive easement to the continuation of the waterway. The court further found that the previous structure which was replaced by the Krack Street culverts was of sufficient capacity to carry away the water that arrived there. The court further found that the Krack Street culverts were inadequate because of the tendency of the Krack Street culverts to become trashed. The court found that there were in excess of 900 acres which are drained by the ditch in question, and that from 17 to 40 acres of the northeastern portion of Forrest are drained into that ditch, depending upon whether there is a light or heavy rain. The court further found that although no one testified as to the optimum opening for the Krack Street wye, the double-box culvert under Route 24 is the immediate major downstream restriction from the Krack Street structure.

The court then ordered that the railroad abate the nuisance by either removing the wye track and opening the ditch, or in the alternative, that they construct a new single-opening structure having at least the capacity of the double-box culverts under Route 24. In the event defendant chose to construct a new structure, the plaintiff was to pay 4% of the cost of constructing such a structure because of the trial court's finding that 4% of the run-off area is within the village. The court further found that it would be inequitable to award attorney fees or costs of litigation to either party, since both parties had incurred substantial costs, and had made substantial efforts to try and get the matter settled, and that both sides are partly responsible for the problems which existed.

On August 29, 1985, the court entered a written order encom-

passing the oral findings and ruling entered upon the record. On September 27, 1985, the plaintiff filed a motion for reconsideration asking the trial court to modify its order to permit plaintiff to recover the fees and costs incurred by it in the prosecution of this action. On September 30, 1985, defendant filed its post-trial motion asking the trial court to vacate its judgment entered August 29, 1985, or in the alternative to modify said judgment. The post-trial motions were heard by the court on October 10, 1985, and both motions were denied by docket-entry order. Subsequently, defendant filed its notice of appeal on November 12, 1985. Plaintiff filed its motion of cross-appeal on November 19, 1985.

The first issue raised on appeal is whether the circuit court erred in finding that defendant installed and maintained a public nuisance.

Defendant's first argument on this issue is that "the trial court erred in finding that the Village of Forrest and its residents had acquired prescriptive rights to the use of the drainage ditch upstream from Defendant's culverts where there was no affirmative evidence that waters from a portion of the lands lying within the Village had been draining into said drainage ditch for more than 20 years prior to the filing of the lawsuit."

■■ The testimony of Reuben Metz establishes the fact that the drainage ditch in question existed for far more than 20 years. Metz was the mayor of Forrest from 1961 to 1979. Metz testified that "he was born in 1907 and *** can recall as a kid it has always been there." Furthermore, the testimony of Richard Eikenberg establishes that between 17 and 20 acres of land located within the village of Forrest naturally drains easterly to the ditch. Even the testimony of defendant's own witness establishes that at least some water from the village of Forrest drains into the ditch. John Goodell testified that "[t]he ditch serves effectively to drain that part of town, or a portion of that part of town, and it effectively drains the railroad." In light of the testimony presented, we believe that defendant's first argument on the first issue presented for review is without merit.

Defendant also contends, under the same argument heading, that "[i]nvasion of another's rights must occur before the period of limitations for establishing a prescriptive right commences to run." Defendant cites *Nelson v. Gundlock* (1983), 120 Ill. App. 3d 117, 457 N.E.2d 1052, as support for this proposition. *Nelson* involved a prescriptive right to flood another party's land. The holding of *Nelson* is that in order to acquire a prescriptive right to block waters flowing upon one's land which results in the flooding of upstream lands, there must be actual flooding for the prescriptive period to commence to run.

*Nelson,* which involved the right to flood another's land, is inapposite to the instant case, which involves the right to use a drainage structure.

Defendant also argues that "[t]he railroad's culverts and drainage ditch cannot constitute a nuisance where the undisputed evidence showed that the artificial drainage provided by the construction of the railroad provided better drainage for the Village of Forrest than had existed in a state of nature." Defendant cites *Smith v. Toledo, St. Louis & Western R.R. Co.* (1912), 168 Ill. App. 670, for the proposition that a railway company is not required to furnish a better means of drainage for the surface water than that which existed prior to the construction of the railroad. From our reading of defendant's brief, however, it appears that defendant has abandoned this argument by admitting that "if a landowner had acquired the prescriptive right to utilize a drain which passes under a railroad's crossing, the railroad would then have a duty to provide adequate drainage structures to allow those additional waters to pass unobstructed." We believe that this statement of defendant [in its reply brief] is an accurate statement of law which disposes of defendant's second argument on the first issue in this case.

Plaintiff relies upon *Saelens v. Pollentier* (1956), 7 Ill. 2d 556, 131 N.E.2d 479, in support of its contention that the trial court did not err in finding that defendant installed and maintained a public nuisance. The fact pattern in *Saelens* is quite similar to the fact pattern in the case at bar. In *Saelens,* the supreme court stated:

> "The adverse user of this railroad right of way and the ditch in question for the drainage of the surface waters for a period of more than 50 years clearly created a prescriptive right to the future use of the ditch for that purpose under many decisions of this court. *Wills v. Babb,* 222 Ill. 95; *Zerban v. Eidmann,* 258 Ill. 486." 7 Ill. 2d 556, 560, 131 N.E.2d 479, 481.

Defendant attempts to distinguish *Saelens* and the cases cited therein by first arguing that in those cases, the evidence showed that the drainage patterns had been occurring for more than 20 years, whereas in the instant case, there was no such evidence presented. As stated above, this argument is without merit. Defendant next argues that even if this court affirms the finding that the drainage patterns in the instant case had been occurring for more than 20 years, there is no evidence in the record that this drainage pattern was open and notorious. Defendant cites *Murtha v. O'Heron* (1913), 178 Ill. App. 347, for the proposition that no prescriptive title arises from an invisible and unknown drain. The evidence in the instant case establishes

that the drainage ditch was open, that it was located adjacent to defendant's property, and that defendant constructed the various drainage structures discussed in this order. Defendant offers no explanation or elaboration for its contention that the drain is invisible or unknown, or that the drainage pattern was not open and notorious, and this argument thus appears to be without merit. Plaintiff's reliance upon *Saelens*, however, appears to be well founded.

■ Accordingly, we hold that sufficient evidence was presented to establish the fact that a prescriptive easement for the use of the drainage structure had been acquired by plaintiff, and that the replacement of the drainage structure in 1974 with a much smaller drainage structure constituted a public nuisance.

■ The second issue raised on appeal is whether the circuit court erred in determining the size of the drainage structure which defendant must install.

At the conclusion of the trial, the trial judge stated:

"[W]e know that *** the old structure had a capacity which ranges in estimated size from about 48 feet, which is Mr. Goodell's, to about 96 feet which is Mr. Eickenberg's. And we know, regardless of what the capacity of that was, we know the capacity of that structure was sufficient to carry away the water that arrived there because there was no complaint about flooding prior to the installation of the new structure, the three culverts that were placed under the wye track. So I don't think that we can very well argue with experience from at least 1920 to 1970 concerning the adequacy of that structure. It was adequate. There was no evidence that there was any flooding during that period of time, and so we know that was adequate."

The trial court then ordered defendant to either remove the tracks and open the ditch, or replace the existing drainage structure with "a new structure having at least the capacity *** of the double-box culverts under Route 24." According to one of plaintiff's witnesses, the double-box culvert under Route 24 "was built with about 144 square foot [*sic*] of opening." The trial court failed to offer any explanation for the apparent inconsistency between the finding that the previous structure, which had at most a 96-square-foot opening, was adequate, and the order requiring defendant to install a drainage structure with at least 144 square feet of opening.

As the trial judge noted, the testimony was undisputed that the drainage structure which existed prior to 1974 was adequate. The trial judge's order requiring remedial action much more onerous than replacing the existing drainage structure with a structure equivalent

to that which existed prior to 1974 is contrary to the manifest weight of the evidence and indeed is inconsistent with the trial judge's finding that the previous drainage structure was adequate. We believe that sufficient evidence was presented at the trial in this cause for us to determine the proper size of the drainage structure which defendant should have been ordered to construct. It is apparent from the record that the plans for the pile trestle bridge called for an opening size of 96 square feet. Although the opening of this structure diminished with the passage of time due to siltation, case law requires that once a prescriptive easement to utilize a drain is established, the defendant railroad has a continuing duty to provide an adequate drainage structure. (See *People v. Metropolitan West Side Elevated Ry. Co.* (1918), 285 Ill. 246, 120 N.E. 748.) We believe that if defendant is ordered to construct a drainage structure with a single opening the size of the original specifications for the pile trestle bridge which previously existed at the location in question, the opening of this new structure would similarly diminish in size with the passage of time due to siltation. We believe that the village is entitled to have the defendant construct a single-opening drainage structure with a 96-square-foot opening. After a careful review of all of the evidence presented in this case, we have reached the conclusion that the trial court should have ordered that the replacement drainage structure be constructed with an opening of 96 square feet rather than 144 square feet. Pursuant to Supreme Court Rule 366 (87 Ill. 2d R. 366), and with the goal of judicial economy in mind, we hereby modify the order of the trial court by requiring defendant to construct a drainage structure with an opening of 96 square feet rather than 144 square feet, as previously ordered.

The third issue raised on appeal is whether the court erred in finding that the village was not entitled to recover attorney fees, engineering costs, and other costs of abating the public nuisance, as provided by the village of Forrest ordinance.

Plaintiff cites section 11.04 of the village of Forrest Municipal Code (Forrest Municipal Code, ch. 11 (1976), nuisance), and section 11—60—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 11—60—2) as the authority for the proposition that plaintiff is entitled to recover attorney fees, engineering costs, and other costs of abating the public nuisance. Section 11.04 of the village of Forrest Municipal Code provides, in pertinent part, as follows:

> "Costs of Abatement. The cost of abating a public nuisance shall be borne by the owner of the property or person causing, permitting or maintaining the nuisance. Such costs shall be as-

sessed against the real estate as other special taxes and shall include the attorney fees of the Village."

Section 11—60—2 of the Illinois Municipal Code provides, in pertinent part, as follows:

"The corporate authorities of each municipality may define, prevent, and abate nuisances."

Plaintiff argues that since section 11—60—2 of the Illinois Municipal Code grants plaintiff the power to abate nuisances, "it follows that they also have the authority to do such acts necessary to carry out the abatement of such nuisances. *Ives v. City of Chicago* (1964), 30 Ill. 2d 582, 198 N.E.2d 518." In *Ives*, the supreme court stated that "[t]he city must have an express grant of authority from the General Assembly to enact the ordinances unless the power is necessarily implied in or incidental to power or powers expressly conferred." 30 Ill. 2d 582, 584, 198 N.E.2d 518, 519.

Defendant argues that "the authority to recover litigation expenses is neither necessarily implied in nor incident to the powers granted to municipalities to abate nuisances. Defendant notes that the Illinois Municipal Code contains several sections which grant to municipalities the authority to recover costs in abating certain nuisances, such as weeds, rats, garbage, and dangerous and unsafe buildings. Defendant also points out the fact that the Illinois Municipal Code was amended as recently as January 1, 1986, to provide for recovery of costs for abatement of dangerous and unsafe buildings, and that the Code is silent regarding the right of a municipality to recover costs of abating the nuisance involved in the instant case. Defendant concludes by stating that "it is apparent that a non-home-rule unit does not have the implied authority to recover litigation expenses and it is equally clear that the Legislature knows how to provide for recovery of costs of abating nuisances when it wishes to do so." This argument is supported by the supreme court opinion in *Ives*, wherein the court stated:

"It would seem that the existence of the enumerated statutory powers * * * precludes the imposition of regulations and licenses upon contractors in fields other than those to which cities have been expressly given regulatory power." *Ives v. City of Chicago* (1964), 30 Ill. 2d 582, 585, 198 N.E.2d 518, 520.

By analogy, the logic of the statement set forth by the supreme court in *Ives* applies here to preclude the plaintiff from recovering litigation expenses in this case. The legislature has provided for specific instances when a city can recover litigation expenses for abating certain nuisances, and the nuisance involved in the present case is not cov-

ered by any of these enactments.

■ Plaintiff argues that "[s]ince the 1970 Illinois Constitution with the establishment of home rule, there has been an erosion of this rule. The courts have begun to apply some of the new standards accorded to home rule municipalities to non-home-rule municipalities as well. This trend can be seen in cases such as *City of Pontiac v. Mason* (4th Dist.—1977) 7 Ill. Dec. 860, 365 N.E.2d 145." From our reading of *City of Pontiac*, we conclude that this case does not offer any support for plaintiff's position on this issue. As defendant points out, *City of Pontiac* reaffirms the principle that non-home-rule units have only those powers expressly granted to them by the legislature. *City of Pontiac v. Mason* (1977), 50 Ill. App. 3d 102, 105, 365 N.E.2d 145, 147.

The other cases cited by plaintiff on this issue are distinguishable. *Village of Riverwoods v. Untermeyer* (1977), 54 Ill. App. 3d 816, 369 N.E.2d 1385, involved the right of a municipality to assess a fine or penalty for violation of a nuisance or ordinance. That case did not involve litigation expenses. *Village of Palmyra v. Warren* (1904), 114 Ill. App. 562, is cited by both parties. In *Village of Palmyra*, the court cited several sections of the Illinois Revised Statutes, and concluded that:

> "The foregoing constitute the only powers conferred by statute upon municipalities, relating to the subject of nuisances. It will be observed that no power is therein conferred upon municipalities by either ordinances, resolution or regulation, to impose upon any person or property, real or personal, the cost of abating a nuisance existing thereon or arising therefrom." 114 Ill. App. 562, 567.

Plaintiff argues that *Village of Palmyra* is distinguishable from the instant case because "there was ample authority established not only in the Illinois Cities and Village's Act as cited, but also in the Village of Forrest ordinance." As noted above, the power of a municipality is limited to that which is expressly granted by the legislature. Since no power to recover litigation expenses for the abatement of the nuisance involved in this case has been granted by the legislature, *Village of Palmyra* offers no support for plaintiff's argument on this issue. We hold that there is no authority for the village of Forrest to recover litigation expenses in this case.

For the reasons stated herein, the portion of the order of the trial court which found that defendant installed and maintained a public nuisance, and the portion of the order of the trial court which denied plaintiff recovery for litigation costs, are hereby affirmed; however,

the portion of the order of the trial court which required remedial action on the part of the defendant is hereby modified to require defendant to construct a replacement drainage structure with a single opening of 96 square feet rather than 144 square feet, as previously ordered.

Affirmed in part and modified in part.

McCULLOUGH, P.J., and MORTHLAND, J., concur.