WILLIAM R. WILLS

*v.*

THOMAS BABB *et al.*

*Opinion filed June 14, 1906.*

1. DRAINAGE—*essentials of prescriptive right to flood another's land.* To establish a prescriptive right to flood the lands of another it must appear that the lands have been flooded for a period of twenty years or more, and that the flooding was adverse and uninterrupted and with the knowledge and acquiescence of the land owner.

2. SAME—*right of land owner to repel waters wrongfully cast upon his land.* Where the waters from a natural water-course are wrongfully cast upon land by reason of barriers which divert the course of the stream, the land owner may erect barriers upon his own land to protect it from overflow, particularly where the waters are thereby turned into a natural water-course of sufficient size on his own land.

3. ESTOPPEL—*when party is estopped to disclaim acts of predecessors in title.* One who bases his right to flood the lands of another upon acts of his predecessor in title in changing a natural water-course, adopts such acts as his own, and is estopped, when such acts are shown to be wrongful, to claim that he was not responsible therefor; and the owner of the flooded lands may show in defense of the claim that his predecessors in title did not consent to the change in such water-course made by the predecessors in title of the claimant.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

MATTHEWS & ANDERSON, and JEFFERSON ORR, for appellant:

The remedy by injunction is proper to prevent the immediate diversion of surface waters. Where irreparable injury is threatened, (the injury need not be consummated,) it is not necessary for the plaintiff to wait until some injury has been done before filing his bill, but equity will take jurisdic-

tion to prevent, if possible, the injury. *Pinkstaff* v. *Steffy,* 216 Ill. 406; Puterbaugh's Ch. 564; Gould on Waters, sec. 513, note 2; *Hicks* v. *Silliman,* 93 Ill. 255; *Young* v. *Highway Comrs.* 134 id. 569; *Dayton* v. *Drainage Comrs.* 128 id. 271; *Jacobson* v. *VanBoending,* 58 Am. St. Rep. 684; *Edwards* v. *Haeger,* 180 Ill. 99; *Newell* v. *Sass,* 142 id. 104; *McArthur* v. *Kelly,* 5 Ohio, 139; *Webb* v. *Portland Manf. Co.* 3 Sumner, 189.

The law in force in this State with reference to the diverting of waters is the civil law, and the rule is the same whether the diversion is surface water or the diversion of the natural flow of a stream. *Pinkstaff* v. *Steffy,* 216 Ill. 406; *Gormley* v. *Sanford,* 52 id. 159; *Gillham* v. *Railroad Co.* 49 id. 484; *Groff* v. *Ankenbrandt,* 124 id. 51; *Lambert* v. *Alcorn,* 144 id. 313; *Dayton* v. *Drainage Comrs.* 128 id. 271.

No person has a right, by the construction of ditches or embankments or other artificial structures, to collect together the surface water from his own land or that of other persons and precipitate it in undue and unnatural quantities upon the lands of his neighbor; and if he attempts to do so a court of equity will interfere to prevent the act, and the remedy by injunction in such cases is clearly established by the authorities. *Pinkstaff* v. *Steffy,* 216 Ill. 406; Puterbaugh's Ch. 564; *Edwards* v. *Haeger,* 180 Ill. 99.

An upper proprietor cannot conduct water from his own land by a new channel in unusual quantities onto particular parts of land below him, to the injury of the lower proprietor. Washburn on Easements, sec. 209; *Peck* v. *Herrington,* 109 Ill. 620; *Hicks* v. *Silliman,* 93 id. 255; Wood on Nuisances, 404; Angell on Water-courses, sec. 208; *Throop* v. *Griffin,* 77 Ill. App. 505.

A riparian proprietor is not only entitled to have the water flow to him so far as it is a benefit, as, to turn his mill or water his cattle, but in times of ordinary flood he is bound to receive the water so far as it is a nuisance by a tendency

to flood his land, and he cannot exclude the superabundant water to the injury of the other proprietor. *Burke* v. *Sanitary District*, 152 Ill. 133; Angell on Water-courses, sec. 324; Gould on Waters, sec. 160.

The proprietor of land may change the course of the natural water-course within the limits of his own land if he restore it to the original channel before the land of another is reached, provided that in changing the course of the stream he does not cast upon the lands of an adjoining proprietor water which could not, in the course of nature, flow upon such adjoining land. *Daum* v. *Cooper*, 208 Ill. 397; *Pinkstaff* v. *Steffy*, 216 id. 406.

The owner of land cannot collect water in artificial channels or drains and cast it upon the land of his neighbor, or so near his line that it will find its way onto his land by natural means, which otherwise would not have reached the lands of his neighbor. 3 Farnham on Waters, secs. 885, 886, and cases cited.

Floods or freshets are regarded as ordinary which are well known to occur in a stream occasionally through a period of years, although at no regular periods. Floods along streams which occur once are bound to occur again, and riparian owners are bound to take notice of such fact. *Railway Co.* v. *Ramey*, 139 Ill. 13; *Railway Co.* v. *Thillman*, 143 id. 137.

WILLIAMS & WILLIAMS, EDWARD DOOCY, and PAUL F. GROTE, for appellees:

The construction of a levee soon after the lands of the defendants became overflowed operated as a protest against the right to overflow their lands and would intercept the running of the statute. Any act of interruption or opposition from which the court might infer that the enjoyment was not rightful was at common law sufficient to defeat the effect of the enjoyment, the question being whether, under all the facts of the case, such enjoyment has been under a

concession of right. Angell on Water-courses, sec. 211; Washburn on Easements and Servitudes, (3d ed.) 131; *Stillman* v. *White Rock Co.* Woodb. & Minn. 549; Greenleaf on Evidence, sec. 539; *Smith* v. *Miller,* 11 Gray, 145; *Nicholas* v. *Aylor,* 9 Leigh, 546; *Powell* v. *Bagg,* 8 Gray, 441; *Sweat* v. *Cutts,* 50 N. H. 439.

The prescriptive right to flood the land of another can only be acquired by full twenty years' flooding, and the flooding must be adverse as against the owner of the land and must be acquiesced in by the owner for the full period of twenty years, and if the owner of the land objects or protests against such flooding within the twenty years, the prescriptive right will not be acquired. *Railway Co.* v. *Hoag,* 90 Ill. 339; *Railroad Co.* v. *Patchette,* 59 Ill. App. 251.

The fact that the owner of the land has for seventeen years permitted, without objection, the surplus water that has in times of high water accumulated above his land to flow into his field, does not estop him from claiming that he shall not be further injured by the continued or increased flow of such water. *Graham* v. *Keene,* 143 Ill. 425.

Where one had flooded another's land for more than twenty years, and it appeared that the latter had complained thereof and denied the right so to do it, it was held that it rebutted the presumption of its having been enjoyed under a grant. It is not necessary, to prevent the gaining of the right by adverse use, that the owner should have exercised his right in opposition thereto by suit at law or any act of violence in resistance. *Nicholas* v. *Aylor,* 7 Leigh, 546.

A riparian proprietor may legally erect any work in order to prevent his lands being overflowed by any change of the natural flow of the river and to prevent the old course of the river from being altered. Angell on Water-courses, sec. 333; *Slater* v. *Fox,* 5 Hun, 544.

An adjacent land owner may build countervailing structures to protect himself against an unnatural flow of water, and is not a wrongdoer in protecting himself from the con-

sequence of such unnatural flow. The rule of the civil law relative to determining a servient estate recognizes only the natural flow of water, which a man may not interrupt. This obligation applies only to waters which flow naturally, without any act of man. *Kauffman* v. *Grieseimer,* 26 Pa. St. 407.

Subsequent owners have the same right of protection from the overflow of their lands as their grantors. Such inchoate right passes by sale, and the successive owners are in privity with each other. *Leonard* v. *Leonard,* 7 Allen, 377.

In the case of abandonment of an old stream and the acquiescence in a new channel, rights must be mutual and reciprocal. The land owners owning the line of the old channel have a corresponding right to have it remain off their land and to continue to run through the new channel, which becomes, as to all persons directly interested after such limitation period, the legal channel, and a twenty years' adverse user of the new channel will operate to make the new channel the legal channel for the water. Gould on Waters, sec. 340; *Smith* v. *Adams,* 6 Paige, 435.

It requires the same length of time to abandon the old channel as it requires to acquire the new channel, and the old channel is not, in law, deemed abandoned until the new channel is acquired by twenty years' non-user. If the new channel is legally acquired, the riparian owner has no more right to divert the water back into the old channel than he has to divert it into another channel or in different directions. The rule must be mutual and reciprocal. *Matthewson* v. *Hoffman,* 77 Mich. 420.

Overflow water may be properly classed with surface water. This depends upon the conformation of the country and the relative position of the water after it has gone beyond its usual channel. If the water becomes severed from the main current or leaves the stream never to return, and spreads out over the lower ground, it has become surface water. *O'Connell* v. *Railway Co.* 87 Ga. 246.

The obstruction of surface water, or an alteration in the flow of it, affords no cause of action in behalf of a person who may suffer loss or detriment therefrom, against one who does no act inconsistent with the due exercise of dominion over his own soil. *Taylor* v. *Fickas,* 64 Ind. 167.

Overflow waters without any channel or definite course, overflowing from contiguous streams or rivers, are surface waters, and fall within the maxim that a man's land extends to the center of the earth and to the skies above, and a proprietor has the right to divert the flow of such waters. *Ganon* v. *Hargadon,* 10 Allen, 106.

The general rule is, that persons may occupy and improve their land by grading or filling up low places or by making any other improvements thereon to make it fit for cultivation; and it makes no difference that the effect of such improvements is to change the flow of the surface waters accumulating or falling on the surrounding country so as to increase the flow of water upon the land of adjoining owners. *Goodale* v. *Tuttle,* 29 N. Y. 459; *Wapple* v. *Railway Co.* 58 Barb. 413; *Turner* v. *Inhabitants,* 13 Allen, 291.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by the appellant, William R. Wills, on October 25, 1903, against the appellees, Thomas Babb and Claib L. Cook, and others, in the circuit court of Pike county, for an injunction restraining said Babb and Cook from constructing a new and repairing an old levee along a portion of the east line of sections 3 and 10, in township 5, south, range 7, west, Pike county, Illinois. Answers and replications were filed, and a trial was had in open court and a decree was entered dismissing the bill for want of equity, which decree has been affirmed by the Appellate Court for the Third District, and a further appeal has been prosecuted to this court.

It appears from the pleadings and proofs that the appellant, in the year 1902, purchased, and at the time he filed his

bill was the owner of record of, the south half of section 14
and the north one hundred acres of the north-west quarter
and the north half of the north-east quarter of section 23, in
said township, and that Babb acquired the title to the north
half and the south-east quarter of section 10, and Cook the
title to the south half of section 3 in said township, in the
year 1902, and were the owners thereof, respectively, at the
time the bill was filed. All of said lands are low, bottom
lands, lying west of the bluffs on the east and the Mississippi
river on the west, and are included within the boundaries of
the Sny Island Levee Drainage District. Said township is
crossed at the north-east corner thereof by the right of way
of the Chicago, Burlington and Quincy Railroad Company,
and at that point, from time immemorial, a water-course
known as Hadley creek, which has a large water-shed, has
flowed from the bluffs into the low lands of the township
bordering the Mississippi river. Its course, after leaving
the high land, is west of south, and originally it flowed
across the east half of section 1, the west half of section 12,
the north half of section 14, the west half of section 14 and
the north-west quarter of section 23, where it emptied into
the Sny and thence found an outlet into the Mississippi river.
At a point south-west of where the creek crosses said rail-
road right of way it bends abruptly to the south, and as early
as 1860, in case of high water, the creek broke over its west
bank at that point and its waters flooded the lands west of its
main channel on section 1, which overflow waters found an
outlet to the south into the Sny through Jack slough, Grubb
slough and Elm flats. In 1860 one Caffrey purchased the
north-east quarter of section 1, and soon thereafter con-
structed a levee upon his land along the west bank of Had-
ley creek at the bend, to prevent the waters overflowing the
banks of the creek at that point. The Caffrey levee gave
way in 1869 and again in 1875, but was repaired at each of
those times. In 1883 that levee gave way for a third time,
and about that time a drainage district, known as the Boyd

drainage district, was organized, which comprised lands lying east of Hadley creek. The commissioners of that district determined to straighten Hadley creek by conveying its waters from the bend upon Caffrey's land in the northeast quarter of section 1, in substantially a straight line south-westerly across the south-west quarter of section 1, the north-east quarter and the south-west quarter of section 11, and emptying them into Jack slough, on the north-east quarter of section 15. To carry out that project, in November, 1883, the commissioners purchased of Caffrey a strip of land two hundred feet wide, lying south-westerly from the bend in the creek on his land, and during the year 1884 constructed what is known as the Caffrey cut, which cut runs from the bend in the creek on Caffrey's land to the north line of the north-east quarter of section 11. When the commissioners reached the north line of section 11 with the cut, the owner of the lands in that section protested against the cut being extended across his lands, and the enterprise of carrying the waters of Hadley creek through that cut into Jack slough by extending said cut was abandoned by the commissioners, and the waters from Hadley creek, which left its bed at the Caffrey bend and flowed down through the Caffrey cut, were permitted to flow out unobstructed and to spread out over section 11 and the adjoining lands, and to reach the Sny through Jack slough, the Elm flats and Grubb slough, and finally the Mississippi river. So soon as the waters of Hadley creek commenced to flow through Caffrey's cut old Hadley creek commenced to fill up, and parties owning lands immediately west of old Hadley creek soon thereafter commenced to construct levees along the north and west sides of their lands, with a view to force the waters flowing thereon south-west, and off of their lands. Levees were constructed by Miller on the south of Caffrey's cut on section 1, by Likes on the north and west sides of the north-west quarter of section 12 and by Atkinson across the south half of section 11. The effect of the

change in the course of the water-flow of Hadley creek caused by the opening of the Caffrey cut, the filling up of the old channel and the construction of the Miller, Likes and Atkinson levees was to throw the water which formerly had flowed in old Hadley creek upon the lands now owned by Babb and Cook, and in 1891, to protect those lands from overflow, the then owners of said lands built a levee along the east line of the south-east quarter of section 3 and the north-east quarter of section 10, about three-quarters of a mile in length. That levee, at the time Babb and Cook purchased their lands, had been carried away, in part, by high water, and at the time the bill was filed in this case they were engaged in repairing that levee and in extending it south along the east line of the north half of the south-east quarter of section 10 to near the north bank of Grubb slough. A public highway runs along the east line of appellees' lands between sections 2 and 3 and 10 and 11, and the levee repaired and built is upon the west side of that public highway and is wholly upon the lands of appellees, and when completed it will be approximately four feet high and a mile and a quarter long, and has a ditch upon each side thereof, the east ditch being constructed in the public highway with the consent of the highway commissioners of said township. The avowed object of the appellees in repairing the old levee and in constructing the new levee is to force the water of Hadley creek south and off of their lands into Grubb slough, Elm flats and Jack slough, and the complaint made by appellant against the old levee being repaired and extended further south is, that it will force the waters of Hadley creek, which he claims now rightfully flow over the appellees' lands and away from his lands, east and south and upon his lands, whereby his lands will be inundated and destroyed for agricultural purposes, the result of which will be to inflict upon him an irreparable injury. The following plat will assist somewhat in understanding more fully the situation of the premises owned by the respective parties and the

location of the levees being repaired and constructed by appellees, and the effect thereof upon the flow of the waters of Hadley creek:

If the appellant has the right to have the waters of Hadley creek flow over the lands of the appellees, and his own lands to be relieved from such overflow, it must arise as a prescriptive right, owing to the fact that said waters have continued to flow over the appellees' lands for a sufficient period to ripen into such right, during which time the appellant's lands have been relieved from the burden of such overflow. The question, therefore, arises, does the evidence establish such prescriptive rights? Formerly the waters of

said creek did not flow over the appellees' lands, but the natural channel of the creek was east of the lands of appellees and in part upon the lands now owned by appellant. In about the year 1860 the Caffrey levee was put in west of the bend on section 1, and the waters of the creek were confined thereby to the channel at that point until 1869, when the levee gave way. The levee was, however, re-built, and the water did not again overflow at that point until 1875, when the levee again gave way. It was, however, re-built and remained intact until 1883, when it was carried away for a third time, and was not re-built. Clearly, up to the year 1883 no prescriptive right arose, as against appellees or their grantors, to have water overflow the banks of the creek at the bend on section 1 and pass over the lands now owned by appellees, as the party who owned the land immediately adjoining the bend prior to that time resisted successfully the overflow at that point by constructing a levee to confine the stream to its banks, which levee, when carried away, was re-constructed. Neither does the evidence show that the overflow at the bend, at any time prior to 1883, passed over the land now owned by appellees, but the evidence shows, up to the time the old channel filled up, which was not until four or five years after the construction of the Caffrey cut in 1884, the overflow waters of Hadley creek did not ordinarily overflow the lands located on sections 3 and 10 north of Grubb slough, but that such waters flowed down over section 11 and passed off through Jack slough, Elm flats and Grubb slough, and subsequent to the overflow of 1883 there was no claim of right made to change the course of Hadley creek until the strip was purchased of Caffrey, in November, 1883, and even after the cut was made, in 1884, it does not appear that any of the waters going through the cut reached the lands now owned by appellees, except in high freshets, until the old creek filled up. In 1891 the owners of sections 3 and 10 took steps to protect their lands from the overflow caused by making the Caffrey cut, the filling up of

the old creek and the construction of the Miller, Likes and Atkinson levees, by constructing the levee which the appellees now seek to repair.

The law is well settled that before a prescriptive right to flood the lands of another can be sustained, it must appear (1) that the lands have been flooded for a period of twenty years or more; (2) that the flooding was adverse and uninterrupted; and (3) that the flooding took place with the knowledge and acquiescence of the land owner. (*Chicago and Northwestern Railway Co.* v. *Hoag,* 90 Ill. 339.) In *Smith* v. *Miller,* 11 Gray, 145, it is said that in order to make the use of the easement in another's land for twenty years conclusive of the right, the use must be adverse, uninterrupted and with the knowledge and acquiescence of the land owner, and that each of these qualities or ingredients essential to the maintenance of the claim is open to contradiction and liable to be disproved. In *Warren* v. *Town of Jacksonville,* 15 Ill. 236, this court said a right by prescription cannot be raised against the consent of the owner, but the use may be so long unobjected to as to authorize the finding of an implied consent, and to raise a presumption of consent, and even of a grant. And in *Nichols* v. *Aylor,* 7 Leigh, 546, where, though one had flooded another's land for more than twenty years, it appeared that the latter had complained thereof and denied the right so to do, it was held that it rebutted the presumption of its having been enjoyed under a grant. In *Chicago and Northwestern Railway Co.* v. *Hoag, supra,* a railroad company claimed the prescriptive right to flow waste water from its tank over the premises of another, and had exercised that right for more than twenty years. Within the period of twenty years complaint was made to the depot agent. The court says (p. 350) : "The complaints of this use of the lot, in flowing water upon it, * * * made * * * to the depot agent, sufficiently disproves acquiescence in such user, and thereby an essential element of a right to an easement by adverse use was shown not to exist."

Here it would seem at least two of the essential ingredients necessary to establish a prescriptive right to flood the lands of the appellees were not established by the evidence: First, it does not appear that the lands of the appellees had been flooded uninterruptedly for a period of twenty years, as, at most, up to 1884 they had only been flooded three times in twenty-four years; and secondly, the flooding was not with the consent or acquiescence of the appellees or their grantors, as the owners of the land in 1891, when it appeared for the first time that their lands were seriously affected by the overflow brought about by the Caffrey cut, the filling up of the old ditch and the construction of the levees by Miller, Likes and Atkinson, sought to protect their lands from such overflow by building the levee which the appellees sought to repair when they were enjoined from so doing, and that in 1903, and within twenty years after the construction of the Caffrey cut, the appellees sought to repair the levee constructed in 1891 and to extend the same south to Grubb slough, thereby showing that the owners of the land in 1891, as well as the appellees in 1903, did not consent to the waters of Hadley creek being thrown upon their lands. From a consideration of all the evidence found in this record, we think it clear that the appellant failed to show that, as against the appellees, he had a prescriptive right to have the waters of Hadley creek cast upon the lands of the appellees and his lands relieved from the burden of the waters of said creek.

The old levee sought to be repaired and the new levee proposed to be erected, and the ditches upon either side thereof, are all located upon the lands of the appellees, and they insist that under the doctrine announced in *Daum v. Cooper,* 208 Ill. 391, and *Fenton and Thompson Railroad Co. v. Adams,* 221 id. 201, as the levees and ditches proposed to be repaired and constructed by them are all upon their own lands, and they convey all the overflow water which they retard by the construction of said levees and ditches, into Grubb slough upon their own lands, which is a natural

water-course, they are clearly within their well defined legal rights in repairing said old levee and in extending the new levee south to the north bank of Grubb slough. The appellant recognizes the doctrine announced in the *Daum case* as sound, but contends it should not be applied to the case at bar, as he insists that Grubb slough is of such inferior size, as compared to Hadley creek, that it will not carry the waters proposed to be turned into it by the erection of said levees, but its banks will immediately overflow, and that the appellees, by the construction of said levees, are, in effect, collecting the overflow waters of Hadley creek upon their lands and throwing them upon the lands of appellant. The questions of the size of Grubb slough and its capacity to carry the waters of Hadley creek were questions of fact, and from a careful examination of the evidence found in the record we are not satisfied that the capacity of Grubb slough, in connection with Jack slough and Elm flats, is not sufficient to carry the waters which will be diverted from appellees' lands by the levees proposed to be repaired and constructed thereon. The fall from the mouth of Caffrey's cut to the head of Grubb slough is a number of feet, and the land between the south end of the proposed new levee and the north-west corner of appellant's lands is low and slopes from both ways towards Grubb slough, and a vast amount of water will pass down over the three-quarters of a mile intervening between the appellant's land and the end of the new levee, in the case of a freshet, before it will be thrown upon appellant's lands. A large number of witnesses upon the hearing gave their opinions as to the effect the repair and construction of said levees would have upon the waters passing through the territory between the mouth of Caffrey's cut and the Sny and between the south end of the new levee and appellant's land. The witnesses of the appellant generally were of the opinion the effect of constructing the new levee and repairing the old would be to flood appellant's land in case of heavy rains, while those for the appellees were of

the opinion the construction and repair of these levees would have no appreciable effect upon the flow of water with reference to appellant's land, except in case of very high water, when the entire bottom would be flooded. The chancellor appears to have taken the view of the appellees' witnesses, and as he heard and saw the witnesses, and by reason of those facts his advantages were superior to ours in arriving at the correct conclusion to be drawn from their testimony upon that point, we are not disposed to disagree with his finding.

From the view, however, we take of this case, the finding of the chancellor upon the question whether or not the repair and construction of said levees will materially affect the flow of water upon the land of appellant is not material, as we think it clear the waters of Hadley creek have been diverted from their natural channel by the Caffrey cut, the filling up of the old creek and the construction of the Miller, Likes and Atkinson levees, in such manner that appellees are justified in erecting a levee upon their east lines to protect themselves from the overflow of Hadley creek thus cast upon them. That is, by reason of the crowding of the waters of Hadley creek westward, a burden has been cast upon the lands of appellees that legally they are not bound to bear, and that the owners of such lands my lawfully erect such barriers along the eastern border of said lands as may be necessary to protect said lands from such overflow,—or, in other words, that they may lawfully repel from their lands, by proper levees, the waters of Hadley creek which have been wrongfully cast upon their lands. Especially must this be true as they propose to erect said barriers upon their own lands, and all the waters which they collect upon their lands by reason of such barriers will be discharged into a natural water-course upon their own lands, and one which, from the evidence, appears to be amply sufficient to convey those waters to the Sny. *Kauffman* v. *Griesemer*, 26 Pa. St. 407; 67 Am. Dec. 437; *Wilhelm* v. *Burleyson*, 106 N. C. 381;

*Harding* v. *Whitney*, 40 Ind. 379; *Avery* v. *Empire Woollen Co.* 82 N. Y. 582.

In the *Avery case* the plaintiff's predecessor in title constructed, and the plaintiff maintained, an embankment upon his land, which changed the position of the channel of a stream and turned the water on defendant's land. Defendant constructed an embankment turning the stream back, and it was held defendant had the right to dam against the water so turned upon his land, and if, in protecting himself, he obstructed the flow of water and turned the stream further back than originally it was, plaintiff could not complain, as it was consequent upon his own wrongful act.

In the *Wilhelm case* the plaintiff brought an action for damages for erecting a dam upon the bank of a creek so that the water overflowed the plaintiff's land. On a hearing it appeared that the plaintiff had previously erected a dam, which obliged the defendant to erect one for his own protection. It was said: "The plaintiff first built a wall on his side of the creek, and thereby caused the water to overflow the defendant's land on the other side and lower down. The defendant had a right to build a dam on the north bank to stop the overflow brought about in that way, and if, in effecting that object, it became necessary to obstruct the flow of water in the creek and cause it to 'eddy,' so as in freshets to flood more of the plaintiff's land than had previously been covered in freshets, the defendant was not answerable in damages for such additional overflow."

In the *Harding case* the plaintiff charged that the defendant had obstructed a stream of water and caused it to flow over the lands of the plaintiff adjoining. The defendant answered that the plaintiff had previously diverted the water-course to defendant's injury, and for his own protection he had provided against its flowing over his land and restored it to its natural channel. A demurrer was filed to the answer and overruled, and it was held there was no error in the ruling of the trial court upon the demurrer.

In the *Kauffman case* it was said (p. 441) : "The plain-tiffs had no right to insist upon his (the defendant's) re-ceiving waters which nature never appointed to flow there, and against any contrivance to reverse the order of nature he might peaceably and on his own land take measures of precaution. * * * The only servitude the plaintiffs could claim in the defendant's land was, that it should receive the overflow which was natural and customary. * * * The elevation which protected him in ordinary times could not be reduced without his consent, and when the undue liberty was taken, he was not a wrongdoer in protecting himself from the consequences."

It is, however, said on behalf of the appellant, that he or his predecessors in title were in no way responsible for the change made in the course of Hadley creek. The same may be said of appellees and their predecessors in title. The appellant seeks to avail himself of the acts of the persons who in part contributed to the diversion of the waters of Hadley creek from their original channel, by insisting that these waters must now flow over the appellees' lands and his lands be relieved from such overflow. As the appellant predicates his right to maintain his bill upon the acts of the parties who in part changed the water-course of Hadley creek, the appellees, we think, have the right to meet such claim by showing that their predecessors in title never con-sented to such change, and that the appellees may, as against the appellant, who predicates his right to have the overflow water from Hadley creek which legally belongs upon his land cast upon the appellees' lands, protect their lands from such overflow by placing upon their lands barriers which will divert said overflow waters off of their lands and back into their natural channel. By claiming a prescriptive right to flood appellees' lands by virtue of the acts of the persons who in part diverted the waters of old Hadley creek from its channel, the appellant makes the acts of those parties his own and is bound thereby.

For the reasons suggested we think the circuit court did not err in dismissing the bill, and that the judgment of the Appellate Court affirming said decree should be affirmed.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*