(No. 13401.—Reversed and remanded.)

THE BAY BOTTOMS DRAINAGE DISTRICT, Defendant in Error, *vs.* THE CACHE RIVER DRAINAGE DISTRICT, Plaintiff in Error.

*Opinion filed December 21, 1920.*

1. DRAINAGE—*drainage districts have power of eminent domain.* Drainage districts organized under the statute have the power to exercise the right of eminent domain for the purpose of completing and perfecting their drainage systems.

2. SAME—*when equity will not enjoin improvement of drainage system.* Where no land of the complainant is physically taken in an improvement of a drainage system and the damages suffered are consequential, only, a court of equity will not enjoin the construction of the improvement but will leave the complainant to his remedy at law.

3. SAME—*when a necessary improvement should not be completely enjoined.* The construction of a necessary improvement by a drainage district should not be completely enjoined even though the evidence shows that the completion of the improvement will result in a taking or damaging of the complainant's property, but the injunction should restrain the construction of the improvement only until the damages can be ascertained and paid.

4. SAME—*a drainage district must bear expense of caring for water diverted into an adjoining district.* A drainage district which constructs a levee near the boundary of an adjoining district to keep out waters from such adjoining district in times of flood must bear the expense of enlarging the ditches of the adjoining district or constructing new ones so as to drain the flood waters so diverted and protect the lands of the adjoining district from harm.

5. SAME—*a drainage district must keep natural water-courses open.* It is the duty of a drainage district to keep its own natural

water-courses open and free from obstruction, so that none of the waters of the district will be forced upon the lands of an adjoining district in times of flood.

6. SAME—*when no relief can be granted on bill to enjoin improvement in drainage district.* One drainage district cannot enjoin the construction of a levee by an adjoining district under a bill framed on the theory that the lands in the complainant district will be damaged, where there is no charge that there will be any damage to the ditches and drains owned by the complainant district and where none of the land owners in said district are parties complainant to the bill.

WRIT OF ERROR to the Circuit Court of Massac county; the Hon. WILLIAM N. BUTLER, Judge, presiding.

CHARLES DURFEE, and H. A. EVANS, (D. W. HELM, of counsel,) for plaintiff in error.

JOHN W. BROWNING, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Traversing Union, Johnson and Pope counties, in the southern part of this State, is a range of high hills known as the Ozark mountains. Stretching across the State immediately south of this range of hills is a basin of low land, the west portion of which is drained by Cache river and the east portion of which is drained by Bay creek, both navigable streams emptying into the Ohio river. Cache river enters this basin in the southwestern part of Johnson county and flows southwest through Pulaski county, emptying into the Ohio river below Mound City. Bay creek leaves the hills through Kidnocker cut, north of Reevesville, in Johnson county, and flows south and east through Pope county and empties into the Ohio river at Bay City, about ten miles south of Golconda. Bay creek is a large stream of water, measuring more than seventy-five feet from bank to bank and being about ten feet deep at Kidnocker cut and increasing in width and depth until it is

more than twenty feet deep at Bay City. The land of this basin is very fertile and when relieved of the excessive water that accumulates in the ponds and sloughs is well adapted to agricultural purposes. In an effort to improve these lands two drainage districts have been formed,—in 1911 the Cache River Drainage District, embracing more than 68,000 acres, lying principally in Massac and Pulaski counties and partly in Pope, Johnson and Union counties, and in 1912 the Bay Bottoms Drainage District, which embraces about 12,000 acres, lying principally in Pope county. The relations of these two districts can best be understood by an examination of the following plat:

The point "A" on the plat is Kidnocker cut, where Bay creek comes through the Ozark mountains and enters the low basin lying between them and the bluffs along the Illinois side of the Ohio river. Reevesville is indicated by the point "B." The districts have a common boundary from the railroad bridge on the Golconda branch of the Illinois

Central, marked "L," on the plat, for some six miles south and east. From the railroad bridge to the Fowler house, marked "C" on the plat, the boundary line is the west bank of Bay creek, which is the natural divide between the watershed of Bay creek and the watershed of Cache river. Bay creek runs practically south from Kidnocker cut to the Fowler house, where it turns east and then follows an easterly course to its outlet in the Ohio river. In crossing the big flat known as Bay bottoms it takes a circuitous route to the north. The fall in the creek after it enters the flat country is slight, so the Bay Bottoms Drainage District cut a relief channel twenty feet wide at the top and ten feet deep from the point "D" on the plat to a point on Bay creek about seven miles east. From the intake of the relief channel to its outlet the main channel of the creek follows a tortuous course for fifteen miles, so the relief channel has double the fall of the creek in half the distance and the flow of the waters is not retarded by the frequent sharp bends of the old channel. With this relief channel Bay creek is now able to care for the ordinary flow of water and the ordinary rainfall of the district and the lands have been made valuable for agricultural purposes. The divide between Kidnocker cut and the Fowler house is low, and after extraordinary rains the flood waters of Bay creek overflow this divide and flow upon the lands of the Cache River Drainage District. During extraordinary floods from the Ohio river, such as occurred in 1913, its waters flow west through Bay bottoms across the divide and down through the Cache river basin, where they re-enter the river. By authority of the county court of Massac county the Cache River Drainage District proposes to build a levee from Kidnocker cut to the Fowler house, raising this divide so that these flood waters will be forced down Bay creek and thereby kept out of the Cache river watershed. This levee, and a ditch along its east side about one hundred feet west of Bay creek, is known as the Bay creek improvement. This

improvement is part of the original plans of the district, and according to the reports of the engineers, including a government engineer from the Department of Agriculture, is necessary to successfully drain the Cache river lands.

Bay Bottoms Drainage District, defendant in error, filed its bill of complaint in the circuit court of Massac county, in which it set out substantially the facts hereinbefore stated and then alleged that the natural course of the overflow waters of Bay creek was southwesterly over the west bank of Bay creek into and through the Cache river watershed, and that the construction of the Bay creek improvement by the Cache River Drainage District, plaintiff in error, in accordance with the plans approved and authorized by the county court of Massac county, would divert these overflow waters from their natural course and throw them into its district. It further alleges "that if said levee is permitted to be constructed as proposed by said Cache River Drainage District it will result in irreparable injury to practically all of the land in Bay Bottoms Drainage District on account of the large quantities of overflow and surface water which by means of said levee and the insufficiency of the natural channel of Bay creek and the artificial ditches in said Bay Bottoms Drainage District to hold and carry off the said overflow surface waters thus diverted from their natural course and forced into said Bay Bottoms Drainage District, and by means thereof the said lands in the Bay Bottoms Drainage District will be so frequently overflowed and flooded with said waters so diverted from their natural course of flowage that said lands will be rendered unfit for habitation and made very much less valuable for agricultural purposes." And it further alleges that if said improvement is made it will have "no complete and adequate remedy at law to procure relief from the injury which would result to it on account of said levee and that any attempt to procure relief at law would result in the multiplicity of suits." It then prays that plaintiff in er-

295–20

·ror be permanently restrained "from constructing Bay creek improvement as above described or from doing any other thing whatsoever that will hinder or retard the overflow waters from said Bay creek * * * from flowing·in their natural course or that will divert the natural course o'f the flowage of the overflow waters of Bay creek * * * and force them to flow in the Bay Bottoms Drainage District."

Plaintiff in error filed a general and special demurrer to the bill and both were overruled. It then filed its answer, denying that the natural course of the overflow waters was westward into its basin, and alleging that if the sunken logs, brush, trees, sediment and various other obstructions were removed from the water-courses in the Bay district there would be no overflowing of Bay creek. It denies that the construction of this improvement will cause the waters in the complainant district to reach any higher level than they would reach without said improvement, and denies that the improvement will damage the lands in said district. It then states in its answer that the complainant and all the land owners in the complainant district have a full, complete and adequate remedy at law, and that it is perfectly solvent and would pay and discharge all damages if any should result from said improvement.

The chancellor heard evidence and entered a decree finding for the complainant district and awarded a permanent injunction restraining plaintiff in error from constructing the Bay creek improvement and from doing any other thing that would in anywise hinder or retard the overflow waters from Bay creek flowing in their natural course in a west-·erly and southwesterly direction, or that would·in anywise divert the natural course of the flowage of the overflow waters of Bay creek and force them into the Bay Bottoms Drainage District. This writ of error is prosecuted to review that decree.

Plaintiff in error contends it has a right to build this levee on its own property and denies that the building of

the levee will damage defendant in error. It contends that it is taking no property of defendant in error and that it is not necessary for it to proceed by eminent domain, and therefore that an injunction will not lie against it on account of consequential damages even though it would be liable for such damages should they arise. Defendant in error contends that irreparable damages will result from the building of this levee, and that the levee would divert so much overflow water from its natural outlet through the Cache River Drainage District that it would flood the lands of the Bay Bottoms Drainage District, which amounts to a taking of said lands, and that therefore injunction is its only complete and adequate remedy.

Under the constitution and statutes of this State drainage districts are given plenary powers for the construction and maintenance of ditches and levees necessary and proper for effecting the drainage of lands for agricultural purposes. They have the power to exercise the right of eminent domain for the purpose of completing and perfecting their drainage systems. (*Smith* v. *Claussen Park Drainage District,* 229 Ill. 155.) As we said in *Bradbury* v. *Vandalia Drainage District,* 236 Ill. 36: "If a drainage district actually takes land compensation must be made before the land is appropriated, and if the district concedes that damage will result to lands such damages may be assessed under the law of eminent domain; but if the district does not concede, in the first instance, that damage will result, an action on the case is an appropriate remedy to determine the question whether lands will be damaged and to recover the damages." Where no part of the premises of complainant is sought to be taken and no direct physical damage to his property is contemplated and the damages to be sustained, if any, are entirely consequential, the complainant is not entitled to have the damages ascertained under the Eminent Domain act but he is remitted to his action at law. (*Penn Mutual Life Ins. Co.* v. *Heiss,* 141 Ill. 35;

*Parker* v. *Catholic Bishop,* 146 id. 158; *County of Mercer*
v. *Wolff,* 237 id. 74.) Where no land of the complainant
is physically taken and the damages suffered are conse-
quential, only, a court of equity will not restrain the im-
provement until the complainant's damages are ascertained
and paid but will leave him to his remedy at law. (*Stetson*
v. *Chicago and Evanston Railroad Co.* 75 Ill. 74; *Truesdale*
v. *Peoria Grape Sugar Co.* 101 id. 561; *Hill* v. *St. Louis
and Northeastern Railway Co.* 243 id. 344; *South Park
Comrs.* v. *Montgomery Ward & Co.* 248 id. 299.) This
improvement being essential to the successful drainage of
the Cache river lands, plaintiff in error ought not to be
completely enjoined from making the improvement. If
the evidence, under a proper bill, shows that the completion
of the improvement amounts to a taking of property in
Bay bottoms, then the injunction should be limited and re-
strain the construction of the improvement until the dam-.
ages to the property taken be ascertained and paid, and no
longer. If the evidence shows no property will be taken or
directly damaged then injunction will not lie.

The evidence in this record shows that the construction
of this levee will hold back more water than the natural
and artificial water-courses flowing through the Bay Bot-
toms Drainage District can carry, and that the result of
the improvement will be the flooding of at least a part of
the lands in this district. It also shows that it will be nec-
essary to enlarge the Bay bottoms relief channel materially
to give it sufficient capacity to handle this additional water.
It is the duty of plaintiff in error to care for the water
which it diverts from its territory and to protect the lands
in the Bay Bottoms Drainage District from harm. The
evidence shows that in order to fulfill this duty it will be
necessary for plaintiff in error to enlarge the Bay bottoms
relief channel, or construct a new relief channel on lands
in the Bay Bottoms Drainage District. To do either of
these acts will be to take lands of another, and it will then

be necessary for it to condemn the lands taken, in accordance with the provisions of the Eminent Domain act.   The evidence also shows that the progress of the waters in Bay creek is retarded by sediment, drifts, overhanging brush and trees and several rock fords, and that if the channel were properly cleaned much of the water which overflows the divide would be carried off in its natural course.   It is the duty of defendant in error to keep its natural water-courses open and free from obstruction, so that none of its waters will be forced upon the lands of others.

The bill in this case is framed upon the theory that the land owners in the Bay Bottoms Drainage District have an easement in the lands of the Cache river basin to have the overflow water of Bay creek pass over the divide, and that this easement is appurtenant to their individual lands and is threatened by the proposed levee.   None of the land owners in the Bay Bottoms Drainage District are parties complainant to this bill, and so no relief can be granted on the theory that their lands will be damaged.   There is no charge in the bill that defendant in error owns any lands or property that will be damaged by the proposed improvement of plaintiff in error, and therefore it can have no relief under the charge that the construction of the levee will result in irreparable damage to the lands in the district.   The bill does not charge that there will be any damage to the drains or ditches of defendant in error, and as that is all the property owned by defendant in error so far as the bill shows, it is clear that under the charges and prayer of the bill defendant in error is not entitled to the relief granted.

The bill is insufficient to support the decree entered. The decree is therefore reversed and the cause remanded with leave to amend the pleadings if so advised, and for further proceedings not inconsistent with the views herein expressed.   ·   *Reversed and remanded.*