(No. 34246.—

FRANK E. GEIS *et al.*, Appellees, *vs.* RUTH ROHRER *et al.*, Appellants.

*Opinion filed September 20, 1957—Rehearing denied Nov. 19, 1957.*

134

MILLER & MILLER, and HAROLD F. TRAPP, JR., both of Lincoln, for appellants.

WILLIAM C. BATES, JR., and HARRIS & HARRIS, both of Lincoln, for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from the circuit court of Logan County, which issued a mandatory injunction commanding the defendants to excavate a certain ditch so as to afford natural drainage for water flowing from lands of the plaintiffs. A freehold being involved, the defendants appeal directly to this court. Cf. *Gough* v. *Goble*, 2 Ill.2d 577.

The plaintiffs own farm land located to the north of land belonging to defendant Ruth Rohrer and leased to her husband, defendant Henry Rohrer. The properties are separated by an east-west road and bounded on the west by an intersecting north-south road.

About 650 feet east of the intersection of the two roads, and located under the east-west road, is a culvert connecting the properties. This culvert (known as the "north culvert") was originally installed in 1911 and replaced in 1953. Leading from this culvert in a generally south-westerly direction on the defendants' land is a "waterway." It extends on a meandering course for a distance of some 1275 feet, where there is another culvert (the "south culvert") under the north-south road.

In past years water has flowed naturally from the plaintiffs' lands, through the north culvert, into the waterway, and on out the south culvert. However, from 1940 on to the date suit was filed in 1954, the flowline of the waterway has risen considerably. The elevation of the waterway on the Rohrer land is now 16 or 17 inches above the flowline of the north culvert, which condition prevails the entire length of the waterway. As a consequence, water no longer flows through the north culvert, and the plaintiffs' lands are not drained as before.

The plaintiffs contend that this filling of the waterway was brought about by actions of the defendants and that the latter are therefore under a mandatory duty to make proper restoration. The defendants deny that they obstructed the waterway, insisting they have been guilty of no tortious conduct whatever in this regard.

The trial of the case took 10 days, with 17 witnesses being heard and 22 exhibits introduced. The court found the defendants had impeded natural drainage and decreed that they remedy the situation by excavating a ditch to certain specified measurements and refrain from any further obstructing. In addition, the plaintiffs were given a per-

petual easement to go upon the defendants' property to inspect the ditch and to perform any acts necessary to maintain the ditch at the specified condition.

While the defendants attack the findings of the court generally (including a finding that natural drainage was impeded), their principal argument is that there is no evidence of any wrongful act on the part of either Henry or Ruth Rohrer to cause the elevation of the waterway and a stoppage of drainage.

Our general approach must be one of respect for the court's decree, since "We have frequently held that the general rule in equity cases is that great weight should be attached to the findings of the chancellor, and that they will not be reversed unless clearly against the weight of the evidence." *Sohio Corp.* v. *Gudder,* 375 Ill. 622, 627.

There is abundant evidence in this record that prior to 1940 water from the plaintiffs' properties drained into the waterway on the defendants' land through the north culvert. And it is further established that water can no longer so drain due to the rise in the level of the waterway. "Where water from one tract of land falls naturally upon the land of another, the owner of the lower land must suffer the water to be discharged upon his land and has no right to stop or impede the natural flow of the surface water." (*Gough* v. *Goble,* 2 Ill.2d 577, 580. See also *Gillham* v. *Madison County Railroad Co.* 49 Ill. 484: *Lambert* v. *Alcorn,* 144 Ill. 313.) Our remaining inquiry, then, is to determine whether there is a reasonable basis for the chancellor's finding that the defendants caused the obstruction (*i.e.,* the raising of the waterway) and hence are subject to a duty to remedy the situation.

The only evidence in the record which in any way accounts for the change in level of the waterway implicates the defendant Henry Rohrer. For example, there is testimony that in 1945 Henry Rohrer placed some logs and brush in the south portion of the waterway, in order, as

he put it, to fill up a "wash," a depression 2 feet deep and 8 to 10 feet wide. An employee of his said the logs used were 12 feet long and 12 inches in diameter. Plaintiff Frank Geis said he saw broken rock, cement, and baled straw in the south end of the waterway in 1941, and in 1945 "a real big dam was put in there." This "dam" was removed in 1948.

In addition, Frank Geis told of seeing the defendant Henry Rohrer farm the waterway in a manner designed to raise its elevation. On one occasion, during 1940, 1941 or 1942, Rohrer plowed the waterway with a 3-bottom plow. He started in the south portion, throwing the first row into the ditch, then went approximately one third of the way up the channel and turned and threw the next furrow back into the ditch, the opposite direction. Geis said Rohrer kept this up until he had made six, seven or eight rounds. On other occasions, Geis testified, the defendant used a heavy disc. He would go back and forth the length of the waterway until he had filled it with dirt. In 1950, he observed that there was dirt and chunks of bean straw in the waterway that appeared to have been "dumped" there. Other witnesses told of seeing chunks of bean stubble and dirt that evidently had been dragged into the waterway. Henry Rohrer denied he ever attempted to so fill up the waterway, but he acknowledged that he did plow, disc and harrow the field (including the waterway) in various years between 1940 and 1951.

It was for the chancellor to judge the credibility of the witnesses, and it was also for him to find whether the "dam" at the south portion of the waterway and the farming operations testified to were sufficient to cause the fill. It is sufficient for us that there is a reasonable basis for his conclusion, and it is not manifestly against the weight of the evidence.

Finally, counsel for the defendants maintain that in any event Ruth Rohrer should not be covered by the in-

junction, since there is no proof that she committed any tortious acts, either personally or through an agent. In support of this they cite *Jansen* v. *Varnum*, 89 Ill. 100, where it was held that a wife-owner was not liable for damages resulting from the wrongful construction of a dam by her husband which caused water to overflow another's land.

But regardless of whether Ruth Rohrer is liable in tort for damages, she is guilty of permitting her property to be used in such a way as to violate property rights of the plaintiffs. As owner of the servient estate she owed a duty not to interfere with this natural drainage, and by necessary implication, not to permit her tenant to so interfere. As owner of the land, she is actually the primary party in interest. She must suffer the water to be discharged upon her land as before, and to this end the court acted properly within the discretion lodged with a court of equity in subjecting her, as well as the tenant, to the obligation of removing the obstruction.

We conclude that the mandatory injunction and restraining order features of the court's decree were therefore proper. But it is not necessary, in order to protect the rights of the parties, to grant the plaintiffs a perpetual easement to go upon the land and maintain the ditch at its specified dimensions, an easement which is binding upon defendant Ruth Rohrer's heirs or assigns. It is sufficient to require the defendants to remove the obstruction and restrain them from further interference with the natural drainage. To authorize the plaintiffs to maintain the precise *status quo* hereafter, regardless of change in circumstances, is to go beyond that which is necessary or reasonable in this case.

For the reasons stated, the decree of the circuit court of Logan County is affirmed in part and reversed in part. The cause is remanded for the entry of a decree in conformity with this opinion.

*Affirmed in part and reversed in part,*
*and remanded, with directions.*