LYLE NELSON, Trustee under the Last Will and Testament of A. V. Nelson, Deceased, Plaintiff-Appellant, *v.* ROBERT E. GUNDLOCK *et al.*, Defendants-Appellees.

Fourth District   No. 4—83—0149

Opinion filed December 8, 1983.

Walter L. Stodd, of Pontiac, for appellant.

Law Offices of Sidney E. Smith, of Pontiac (James A. Casson, of counsel), for appellees.

JUSTICE TRAPP delivered the opinion of the court:

Plaintiff Lyle Nelson brings this appeal from orders of the circuit court of Livingston County granting summary judgment for the defendants, Robert and Gladys Gundlock and Agnes Baker. Two controlling issues are presented for our review: (1) whether a question of fact exists as to defendants' acquisition of a prescriptive right to flood plaintiff's land; and (2) whether a servient landowner has a common law duty to remove natural accumulations of debris in a watercourse. We affirm in part, reverse in part, and remand for further proceedings.

Plaintiff is the owner of farm land lying to the east of defendants' land and described as the northwest quarter of section 21, township 29 north, range 5 east. West of plaintiff's land and servient thereto is defendants' land described as the northeast quarter of section 20, in that township and range. Two watercourses form the basis for the

present dispute: Baker's Run, a perennial watercourse in the northern portions of the parties' land which flows in a general southwest direction, and a drainage swale in the southern part of the parties' land which travels from plaintiff's land to the defendants' land through a culvert under a township road.

Count I of plaintiff's complaint concerns the second watercourse and alleges that defendants have constructed, within the last 20 years, a berm of earth or obstruction impeding the natural flow of water through the culvert, resulting in a flooding of plaintiff's land. Counts II and III allege that defendants wrongfully allowed "trees, shrubs, grass, weeds, brush and other debris" to accumulate in the creek bed of Baker's Run creek, causing water from Baker's Run to accumulate on plaintiff's property. In answer to count I, defendants raised as an affirmative defense that they had acquired a prescriptive right to flood plaintiff's land, claiming that the berm referred to had existed for well over 20 years adversely to plaintiff's rights. In response to counts II and III, defendants asserted, by way of affirmative defense, that the obstructions were only natural obstructions and denied any obligation to clean Baker's creek of such. In separate orders, the trial court granted summary judgment for the defendants on all counts of plaintiff's complaint.

To establish a prescriptive right to flood the lands of another, there must be a flooding for a period of 20 years which is both adverse and uninterrupted and with the knowledge and acquiescence of the landowner. (*Wills v. Babb* (1906), 222 Ill. 95, 78 N.E. 42; *Montgomery v. Downey* (1959), 17 Ill. 2d 451, 162 N.E.2d 6.) The record consisting of the pleadings, depositions, and affidavits, discloses that a material question of fact remains to be decided before these elements are established. There seems to be no question of fact that the obstruction or berm has been adjacent to the culvert for well over 20 years, but it remains to be decided whether this obstruction has caused any invasion of plaintiff's rights for 20 years. The only affidavit filed in opposition to defendant's motion for summary judgment which addresses this issue is that of plaintiff's tenant, Russow, who states that "prior to the year 1977, the drainage water flowed through the culvert slowly, but did not back up and flood plaintiff's land."

Part of the problem with this issue stems from defendants' erroneous belief that an easement need not invade another's rights to commence the period of limitations. Defendants assert in their brief that the mere maintenance of the obstruction for 20 years, regardless of whether plaintiff's land is flooded, is controlling in deciding

whether a prescriptive right to flood is created. We disagree. Clearly, *Wills* and *Montgomery* indicate that an invasion of another's rights must occur before the period of limitations commences to run. An argument similar to that made by the defendants was made in the case of *Davis v. Louisville & Nashville R.R. Co.* (1922), 147 Tenn. 1, 244 S.W. 483. In *Davis*, a dominant landowner brought suit against a railroad for flooding damages to his crops for the years 1916 and 1917. The evidence indicated that the railroad had constructed a bridge with a culvert and embankment in the late 1800's over a watercourse leading to the Cumberland River, but it was not until approximately 1901 that the culvert became obstructed and flooded plaintiff's land. The railroad argued that it had a prescriptive right to flood plaintiff's land because the embankment and culvert had existed for more than 20 years, much as defendants argue here that their berm had been in existence for more than 20 years. The court's response is pertinent to our inquiry here:

"The mere construction of the embankment did not constitute an entry upon the plaintiff's property; it was of itself no trespass on or invasion of his rights; it was but use of his own property which became an invasion of the plaintiff's rights upon the maxim 'sic utere tuo ut alienum laedas'; it was but the maintenance of a private nuisance which of course afforded no right of action to plaintiff until actual injury resulted therefrom.

\*\*\*

We conclude, therefore, that we cannot begin to count the prescriptive period from the date of the construction of the embankment, but that it must be counted from the date when experience showed the culvert to be insufficient. \*\*\* Before it can rely upon a presumption of a grant, it must be made to appear that at some period more than 20 years before plaintiff's cause of action arose its embankment and culvert actually caused plaintiff's land to overflow, and that this condition continued throughout the period." 147 Tenn. 1, 11-13, 244 S.W. 483, 486-87.

■ Summary judgment should be granted only when the pleadings, depositions, and admissions, together with any affidavits, show that there is no genuine issue as to a material fact and that the movant is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c); *McBride v. Commercial Bank* (1981), 101 Ill. App. 3d 760, 428 N.E.2d 739.) Since the affidavits, pleadings and depositions on file show that there is a material question of fact as to

whether plaintiff's land has been adversely and continuously flooded for a period of 20 years, we hold that the trial court erred in granting defendants' summary judgment on count I of plaintiff's complaint.

■ Counts II and III charge that defendants wrongfully allowed Baker's Run to become obstructed with natural debris resulting in an overflow of water onto plaintiff's land. Defendants denied that they had "wrongfully obstructed" Baker's Run and set up as an affirmative defense that any obstructions were only obstructions occurring in the course of nature and denied any duty to remove such. Defendant Robert Gundlock's affidavit states that neither he nor any other person took any steps to obstruct the flow of water in Baker's Run creek. Plaintiff suggested in the trial court and asserts here that servient landowners, such as defendants, have a duty to remove natural obstructions from a perennial watercourse. We disagree.

In *Geis v. Rohrer* (1957), 12 Ill. 2d 133, 145 N.E.2d 596, the owners of a dominant estate sought a mandatory injunction to compel servient landowners to excavate a natural watercourse which plaintiffs contended had been filled in as a result of defendants' actions. There, the evidence indicated that one of the defendants had plowed along the waterway throwing dirt in it and had placed logs and other debris in and along the ditch. On appeal to the supreme court, the court commented that "[o]ur remaining inquiry, then, is to determine whether there is a reasonable basis for the chancellor's finding that the defendants caused the obstruction *** and hence are subject to a duty to remedy the situation." (12 Ill. 2d 133, 136, 145 N.E.2d 596, 598.) We read *Geis* as well as *Dial v. City of O'Fallon* (1980), 81 Ill. 2d 548, 411 N.E.2d 217, to indicate that either a negligent or intentional obstruction of a waterway so as to invade another's interest in land will result in liability. In neither case, nor in any other case which we have found involving private landowners, has it been held that a servient landowner is absolutely liable to clean a watercourse. In fact, the contrary has been held.

In *Savoie v. Town of Bourbonnais* (1950), 339 Ill. App. 551, 90 N.E.2d 645, a dominant landowner brought suit against a town highway commissioner, a county, and adjoining landowners seeking a mandatory injunction to compel them to repair and maintain a drainage ditch which overflowed on plaintiff's land as a result of its being filled with debris. In upholding the dismissal of the complaint, the appellate court stated:

> "These cases do not hold that defendants may be compelled at their own expense to perpetually secure plaintiff's property rights from the adverse forces of nature. ***

The law, on the contrary, recognizes that it is the duty of the owner of an easement to keep it in repair (*Murtha v. O'Heron*, 178 Ill. App. 347), and no obligation is generally imposed upon those whose lands are thus placed in servitude to make repairs. (*Prescott v. Williams*, 5 Mtc. (Mass.) 429, 39 Am. Dec. 688; 67 C.J. 908.) The proper remedy ordinarily is that the owner of the easement has the right to go on the servient tenement to keep the drain in repair (*Wessles v. Colebank*, 174 Ill. 618; *Nixon v. Welch*, 238 Iowa 34, 24 N.W. (2d) 476). Such an interpretation is consistent with our fundamental concepts respecting property rights whereby one owning property is expected to protect those rights himself, and the only duty of others is not to actively invade them." (339 Ill. App. 551, 559, 90 N.E.2d 645, 650.)

See also Advising Farmers sec. 24.16, at 24—13 (Ill. Inst. Cont. Leg. Educ. 1983).

We do note that in *Bay Bottoms Drainage District v. Cache River Drainage District* (1920), 295 Ill. 301, 129 N.E. 152, the supreme court stated that drainage districts have a duty to keep district drains free from obstructions. This case is clearly inapposite, however, inasmuch as it was concerned with statutorily created drainage districts which have a statutory duty to keep their drains in operation and repair. (Ill. Rev. Stat. 1981, ch. 42, par. 4—15.) With respect to private landowners, the drainage code only imposes a duty not to intentionally or wilfully interfere with a ditch or natural drain. Ill. Rev. Stat. 1981, ch. 42, par. 2—12.

■ The complaint, affidavits and other matters on file in support of the defendants' motion for summary judgment show clearly that the obstructions which existed were natural and not the responsibility of the defendants. (There is some suggestion in an affidavit of Robert Russell that a concrete ford obstructs Baker's Run creek, but the uncontradicted affidavit of defendants' surveying expert Krause indicates that the elevation of the concrete ford is much lower than the creek as it leaves plaintiff's land.) Because there is no question of fact that the obstructions which existed occurred in a state of nature, and because we can find no support for plaintiff's suggestion that a servient landowner has a commonlaw duty to remove natural accumulations in a watercourse, we affirm the order of the trial court granting summary judgment for the defendants on counts II and III.

For the foregoing reasons, the order of the circuit court of Livingston County granting summary judgment for defendants on counts II and III is affirmed. The order granting summary judgment for the

defendants on count I is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings.

MILLS, P.J., and MILLER, J., concur.